JAMES MOODY VAUGHAN AND OTHERS, APPELLANTS, *vs.* HENRY
NORTHUP, ADMINISTRATOR OF JAMES MOODY, DECEASED, AND
.OTHERS.

An administrator, appointed, and deriving his authority from another state, is not liable
to be sued in the District of Columbia, in his official character, for assets, lawfully
received by him in the District, under, and in virtue of his original letters of adminis-
tration.

Every grant of administration is strictly confined in its authority and operation to the
limits of the territory of the government which grants it, and does not, de jure, extend
to other countries. It cannot confer, as a matter of right, any authority to collect
assets of the deceased, in any other state; and whatever operation is allowed to it
beyond the original territory of the grant, is a mere matter of courtesy, which every
nation is at liberty to yield or to withhold, according to its own policy and pleasure,
with reference to its own institutions, and the interests of its own citizens.

The administrator is exclusively bound to account for all the assets which he receives
under, and by virtue of his administration, to the proper tribunals of the government
under which he derives his authority. The tribunals of other states have no right
to interfere with, or control the application of those assets according to the lex loci.
Hence it has become an established doctrine, that an administrator cannot, in his
official capacity, sue for any debts due to his intestate, in the Courts of another State;
and that he is not liable to be sued in that capacity, in the Courts of the latter, by
any creditor, for any debt due there by his intestate.

The debts due from the government of the United States, have no locality at the seat
of government. The United States, in their sovereign capacity, have no particular
place of domicile: but possess, in contemplation of law, an ubiquity throughout the
Union; and the debts due by them are not to be treated like the debts of a private
debtor, which constitute local assets in his own domicile.

The administrator of a creditor of the government, duly appointed in the state where
he was domiciliated at his death, has full authority to receive payment, and give a
full discharge of the debt due to his intestate, in any place where the government
may choose to pay it; whether it be at the seat of government, or at any other place
where the funds are deposited.

VOL. XV.—                          1

[Vaughan et al. *v.* Northup et al.]

The act of Congress, of June, 1822, authorizes any person to whom letters testamentary or of administration have been granted, in the States of the United States, to prosecute claims by suit in the Courts of the District of Columbia, in the same manner as if the same had been granted to such persons by the proper authority in the District of Columbia. The power is limited by its terms to the institution of suits; and does not authorize suits against an executor or administrator. The effect of this law was to make all debts due by persons in the District, not local assets, for which the administrator was bound to account in the Courts of the District; but general assets, which he had full authority to receive, and for which he was bound to account in the Courts of the state from which he derived his letters of administration.

The case of Kane *vs.* Paul, 14 Peters, 33, cited.

ON appeal from the Circuit Court of the United States for Alexandria, in the District of Columbia.

A bill was filed on the equity side of the Circuit Court of the District of Columbia, stating that the complainants are the next of kin and distributees of James Moody, deceased, who resided in Kentucky at the time of his death: that the defendant, Northup, took out letters of administration on the estate of said Moody, in the proper court in Kentucky, and by virtue of said letters claimed and received from the government of the United States a large sum of money, to wit, fifty-two hundred dollars. The bill further stated that the complainants reside in Virginia; that Northup was in the District of Columbia at the time of filing the bill; (and Northup was actually found in said District, as appears by the marshal's return of the subpoena;) and that the other defendants reside in Kentucky, and pretend to be the next of kin and distributees of said Moody. The bill prays an account of said estate against said Northup, and distribution of the assets received from the United States, &c. Northup answered, and pleaded to the jurisdiction of the Court on the ground that he was only responsible to the Court in Kentucky, in which he had obtained letters of administration: he then went on and answered the bill at large, denying all its material allegations. The other defendants also came in and answered the bill. The complainants ordered the plea of Northup to the jurisdiction of the Court to be set down for argument; and upon the argument, the Court below ordered the bill of complaint to be dismissed.

The complainants appealed to the Supreme Court.

[Vaughn et al. *v.* Northup et al.]

The case was argued by Mr. Brent, for the appellants; and by Mr. Coxe, for the appellee.

Mr. Brent stated that the question was, whether a foreign administrator, one who had taken out letters of administration in another state, can come into the District of Columbia, and receive money in the District, and was not answerable for the amount so received in the District.

The appellee, Henry Northup, was in the District when the suit was brought.

It is admitted, that at common law, an administrator is only liable to account where the administration is granted. But this rule should not be applied to cases in the District of Columbia. There would be a peculiar hardship in the rule, if it is applied here. A small amount of security might be taken on the granting letters of administration; and on those letters, a large amount of assets might be received out of the state granting the same. The creditors and next of kin would have no relief against the sureties of such an administrator.

An act of Congress of the 24th of June, 1812, authorizes administrators from other states of the Union, to collect money and institute suits in the District of Columbia. This places the foreign administrator on the same footing as if letters had been granted to him in the District of Columbia, and places him under the same responsibilities. The Court is bound to take notice of foreign administrators coming into the district. Kane *v.* Paul, 14 Peters, 33.

Thus, no administration to the effects of Moody could be obtained in this District, after the granting of the letters to Northup in Kentucky; but the funds were all received here by the administrator: and the Court will administer the assets, at the place where they have been received, and at the place of suit. 11 Massachusetts Reports, 264. A legatee can sue the administrator, when he obtains the assets. 4 Mass. 344. 3 Peters' Rep. 144. Story's Conflict of Laws, 1st ed., 425, declares that non-resident claimants are to be regarded in the same manner as residents. Cited, 1 Mason, 381. 1 Story's Conflict of Laws, sect. 534. 531. 588.

The act of Congress of 1821, gives jurisdiction to the Courts of the District of Columbia, in all cases in law or equity, where

both, or either of the parties are residents within the District of Columbia. The Probate Courts of Kentucky have not exclusive jurisdiction over the distribution of assets. 1 A. K. Marshall's Rep. 459.

As to the pleadings, cited, Livingston *v.* Story, 11 Peters, 393. Milford's Pleading, 305, 309.

Mr. Coxe, for the appellees. In the case of Livingston *v.* Story, there was a plea to the disability of the plaintiff. The objection in this case is to the jurisdiction of the Circuit Court of the District of Columbia, in the matter of this administrator, and the distribution of the assets, which must be made, as a great portion of them has already been made, in the state of Kentucky.

The act of Congress of 1812, does no more than authorize administrators of other states to sue in the District of Columbia; this was necessary, in consequence of the large claims in the District, from every part of the Union. The act goes no further than this; and not to abrogate all the laws prevailing on the subject. The law never intended to oblige a foreign administrator to stand a suit here; it would be vastly injurious, if such should be the law.

The act giving jurisdiction to the Courts of the United States, in the District of Columbia, cannot receive the construction given to it by the counsel for the appellants; the jurisdiction is given in cases properly cognisable in the Courts, when one of the parties is in the District. Cited, Story's Conflict of Laws, sect. 422. 513. 515.

The argument for the appellants is, that as the money was received in the District of Columbia, it is to be distributed and administered according to the laws of the District. It is important that this question shall be settled. This was a claim in the hands of an administrator in Kentucky, of a debt due to a citizen of Virginia, by the state of Virginia, for military services, for which the United States had agreed to pay. Is this to bring the fund, because it was received in the District, subject to the laws of the District?

Mr. Justice STORY delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of the District of Columbia, sitting for the county of Washington, dis-

missing a bill in equity, brought by the appellants against the appellees.

The facts, so far as they are necessary to be stated upon the present occasion, are, that one James Moody, an inhabitant of Kentucky, died in that state about the year 1802, intestate, without leaving any children; that in May or June, 1833, the defendant, Northup, obtained letters of administration upon his estate from the proper Court of Jefferson county, in Kentucky; and afterwards under and in virtue of those letters of administration, he received from the treasury of the United States the sum of five thousand two hundred and fifteen dollars and fifty-six cents, for money due to the intestate, or his representatives, for military services rendered during the revolutionary war. The present bill was brought by the appellants, claiming to be the next of kin, and heirs of the intestate, for their distributive shares of the said money, against Northup as administrator; and the other defendants, who are made parties, are asserted to be adverse claimants, as next of kin and distributees. At the hearing of the cause in the Court below; the same having been set down for argument upon the answer of Northup, denying the jurisdiction of the Court; the bill was ordered to be dismissed for want of jurisdiction; and from that decree the present appeal has been taken.

Under these circumstances the question is broadly presented whether an administrator, appointed and deriving his authority from another state, is liable to be sued here, in his official character, for assets lawfully received by him under and in virtue of his original letters of administration. We are of opinion, both upon principle and authority, that he is not. Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens. On the other hand, the administrator is exclusively bound to account for all

A 2

the assets which he receives under and in virtue of his adminis-
tration to the proper tribunals of the government from which he
derives his authority; and the tribunals of other states have no
right to interfere with or to control the application of those assets,
according to the lex loci.   Hence it has become an established
doctrine that an administrator, appointed in one state, cannot,
in his official capacity, sue for any debts due to his intestate in
the courts of another state; and that he is not liable to be sued
in that capacity in the Courts of the latter, by any creditor, for
any debts due there by his intestate.   The authorities to this
effect are exceedingly numerous, both in England and America;
but it seems to us unnecessary, in the present state of the law,
to do more than to refer to the leading principle as recognised
by this Court in Fenwick v. Sears, 1 Cranch, 259; Dixon's
Executors v. Ramsay's Executors, 3 Cranch, 319; and Kerr
v. Moon, 9 Wheat. 565.

But it has been suggested that the present case is distinguish-
able, because the assets sought to be distributed were not collected
in Kentucky, but were received as a debt due from the govern-
ment at the treasury department at Washington, and so con-
stituted local assets within this District.   We cannot yield our
assent to the correctness of this argument.   The debts due from
the government of the United States have no locality at the seat
of government.   The United States, in their sovereign capacity,
have no particular place of domicile, but possess, in contempla-
tion of law, an ubiquity throughout the Union; and the debts
due by them are not to be treated like the debts of a private
debtor, which constitute local assets in his own domicile.   On the
contrary, the administrator of a creditor of the government, duly
appointed in the state where he was domiciled at his death, has
full authority to receive payment, and give a full discharge of
the debt due to his intestate, in any place where the government
may choose to pay it; whether it be at the seat of government,
or at any other place where the public funds are deposited.   If
any other doctrine were to be recognised, the consequence would
be, that before the personal representative of any deceased
creditor, belonging to any state in the Union, would be entitled
to receive payment of any debt due by the government, he would
be compellable to take out letters of administration in this Dis-

trict for the due administration of such assets. Such a doctrine has never yet been sanctioned by any practice of the government; and would be full of public as well as private inconvenience. It has not, in our judgment, any just foundation in the principles of law. We think that Northup, under the letters of administration taken out in Kentucky, was fully authorized to receive the debt due from the government to his intestate; but the moneys so received constituted assets under that administration, for which he was accountable to the proper tribunals in Kentucky; and that distribution thereof might have been, and should have been, sought there in the same manner as of any other debts due to the intestate in Kentucky.

It has also been supposed, that the act of Congress of the 24th of June, 1812, may well entitle the appellants to maintain the present suit; since it places a foreign administrator upon the footing of a domestic administrator, in the District of Columbia. That act provides that it shall be lawful for any person to whom letters testamentary or of administration hath been or may hereafter be granted by the proper authority, in any of the United States or the territories thereof, to maintain any suit or action, or to prosecute and recover any claim in the District of Columbia, in the same manner as if the letters testamentary or of administration had been granted to such person by the proper authority, in the said District. It is observable, that this provision is limited by its terms to the maintenance of suits, and the prosecution and recovery of claims in the District, by any executor or administrator appointed under the authority of any state. It does not authorize any suits or actions in the District, against any such executor or administrator. Its obvious design was, therefore, to enable foreign executors and administrators to maintain suits, and to prosecute and recover claims in the District, not against the government alone, but against any persons whatever, resident within the District, who were indebted to the deceased, and to discharge the debtor therefrom, without the grant of any local letters of administration. In effect, it made all debts due from persons within the District, not local assets, for which a personal representative would be liable to account in the Courts of the District; but general assets, which he had full authority to receive, and for which he was bound to account in

the Courts of the state from which he derived his original letters of administration.    Indeed, the very silence of the act as to any liability of the personal representative to be sued in the Courts of the District for such assets, so received, would seem equivalent to a declaration that he was not to be subjected to any such liability.    It fortifies, therefore, rather than weakens the conclusion which is derivable from the general principles of law, upon this subject.  The same view of the purport and objects of the act was taken by this Court, at the last term, in the case of Kane *v.* Paul, 14 Peters, 33.

Upon the whole, we are of opinion that the Circuit Court was right in dismissing the bill for the want of jurisdiction; and, therefore, the decree is affirmed with costs.

This case came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel.

On consideration whereof, it is ordered and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.