Peelle, J.,
deliveréd the opinion of the court:
The findings present the question, broadly stated, as to whether the Secretary of the Treasury has the discretion in law to pay or not to pay a • receiver, appointed by a State court, of the property and fhings in action of a creditor of the United States, for the purpose of reaching’ the assets or choses in action of such creditor for the payment of his debts; and if payment be made to such creditor by such officer after due notice of the appointment of such receiver and the order restraining such creditor from receiving money to his credit, whether a judgment can be recovered in this court in favor of the receiver for the amount so paid.
The material and substantial fact disclosed by the findings are these:
In 1851 Samuel Forrest recovered a judgment against Rod-man M. Price, in the supreme court of the State of New Jersey, for 117,000.
In 1874, Forrest, having in the meantime died, and execution having been returned unsatisfied, his widow, as adminis-tratrix, revived the judgment by scvre facias and in her bill prayed discovery, injunction, and the appointment of a receiver, to which answer was filed. No further proceedings were had therein until 1892, at which time said judgment, with the interest accrued thereon, amounted to over $60,000.
In February, 1891, the Congress enacted,a law whereby the Secretary of the Treasury was authorized to settle and adjust the accounts of said Price, late purser of the United States Navy, and to pay to him, or his heirs, any sum found due thereon.
In the adjustment thus made there were found due to Price $76,204.08, of which $75,000 Price claimed had been advanced by him out of his private funds to A._M. Yan Nostrand, his successor in office.
In the adjustment of said accounts $31,000 was withheld from Price to await the determination of a suit to be thereafter brought against Price as surety upon Yan Nostrand’s bond as acting purser of the United States Navy.
*334 For the payment of the balance, $45,204.08, drafts were issued and made payable to Price; and in the meantime the chancery court issued an order restraining him from collecting' or making any indorsement on the drafts referred to, of which order a certified copy was served on him. But notwithstanding said order he received from the Assistant Treasurer at Washington, D. C., payment of said drafts aggregating the sum of $45,204.08.
October 10, 1892, thereafter, the claimant herein was appointed by the chancery court receiver in said cause of the property and things in action belonging or due to or held in trust for Price, with authority to possess, receive, and sue for such property and things in action and the evidence thereof. The receiver gave bond in the sum of $40,000, as required by the court. A duly certified copy of the order of appointment was sent to the Secretary of the Treasury, about which there is no controversy.
Thereafter, an attachment was issued against Price for contempt of court in disobeying the order restraining him from indox*sing the drafts and receiving payment thereon, and he was fined $50 for contempt and directed to pay the residue of the money, $31,000, to the receiver, which proceedings were affirmed on appeal to the court of errors and appeals of the State of New Jersey.
The suit against Price as surety on Yan Nostrand’s bond was commenced, but was thereafter, prior to December 22, 1893, dismissed.
On December 4, 1893, the chancery court of New Jersey issued an order enjoining Price from seeking to obtain any part of said balance of $31,000 so remaining to his credit, of which order a duly certified copy was sent to the Secretary of the Treasury, after which the receiver made formal demand upon the Secretary for the payment of the money to him. The suit against Price as surety on the bond of Yan Nostrand was commenced, but dismissed prior to December 22, 1893.
Thereafter, the supreme court of the District of Columbia in a proceeding instituted by the claimant as receiver and Anna M. Forrest, administratrix of the estate of Samuel Forrest, after personal service upon Price and his attorney, John C. Fay, enjoined Price from receiving, assigning, collecting, *335 or indorsing to his own use, b,y himself or by his attorney, any warrants or drafts from the Treasurer of the United States in payment in whole or in part of any of said balance of $31,000 until the further order'of the court, not, however, interfering with the claim of any creditor of Price resident within the District of Columbia.
December 22, 1893, in said supreme court, upon the affidavits of said Fay and Jeremiah M. Wilson, with the assent and affidavit of Price, it was made to appear to the court that said parties and others named in the findings, residents of said District, were bona fide creditors of Price, and as such had claims against- him aggregating $7,900, and in view thereof it was ordered by the court that the said sum be exonerated from the effect of the decree restraining Price from receiving any warrant or draft as aforesaid.
On the same day the order was modified the Comptroller certified a balance in Price’s favor of $7,900, leaving $23,100 still to the credit of Price, which was withheld pending the injunction against Price in the supreme court of the District, as aforesaid.
December 23,1893, in disregard of the restraining order of the chancery court of. New Jersey, a draft was issued to Price, late purser of the United States Navy, for said sum of $7,900, and he indorsed the same to John- C. Fay, to whom the money was paid, as appears from their indorsements on said draft set out in the findings.
December 25, 1893, the receiver addressed a letter to the Secretary in which, among other things, the Secretary was requested to take the opinion of the Attorney-General upon the questions involved, which was done; and thereafter, April 1, 1899, the Comptroller ordered the said balance of $23,100 to be paid to the claimant as receiver, which was done.
It will thus be seen that the particular question before the court is as to the right of the receiver to recover judgment for the $7,900 so paid to Fay on the draft issued to Price.
The claimant’s contention is that the $31,000 standing on the books of the Treasury Department to the credit of Price was a personal asset within the State of New Jersey, and that as Price was domiciled in New Jersey, where he was personally served with process, the title to the claim passed to the *336 receiver by operation of the laws of New Jersey, and therefore entitle him to collect and receive from the United States Treasury the money thereon, to the exclusion of Price.
That contention the defendants deny, on the theory, substantially, that the laws of one sovereignty have no force by their own operation within the jurisdiction of another sovereignty.
In the case of Ogden v. Saunders (12 Wheat., 213), where the question was first distinctly presented to the Supreme Court, it was ruled that an insolvent or bankrupt law in one State did not affect the rights of creditors who were citizens of other Stales; and the principles thus announced were adhered to five years later in the cases of Boyle v. Zacharie (6 Pet., 348 and 635).
Following the rule thus announced and affirmed came the decision in 1854 in the well-known case of Booth v. Clark (17 Howard, 322), where it was held that a receiver appointed under a creditor’s bill filed by the court of chancery of New York against a resident of that State did not vest in the receiver title to a claim in favor of such debtor against a foreign Government (Mexico).
The substance and effect of that decision is that the receiver so appointed was limited in his action to the territorial limits of that State; that the laws of New York, no matter what the decree of the court in respect of the authority of the receiver to sue elsewhere, did not extend to a foreign jurisdiction or to the jurisdiction of another State.
It is unquestionably the recognized and well-settled rule that a court can not endow or confer upon its officers powers beyond its own jurisdiction. Pank of Augusta v. Earle (13 Pet., 519); Pennoyer v. Nebb) (95 U. S., 714); Pana v. Bowler (107 U. S., 529); Hilton v. Guyot (159 U. S. R., 113 and 163).
The personal property of a debtor passes to the receiver as a general rule by operation of law without any act of transfer on the part of the debtor, but in respect of the title to property without the State of the receiver’s appointment he ‘ ‘ takes the property subject to every equity of foreign creditors and subject to all remedies of foreign countries.” (Smith on Receivers, 109 et seq.)
However, the foregoing well-established rules do not pre *337 vent one State or sovereignty from recognizing tbe laws of another by that other rule known as comity between States or sovereignties and by which is meant “the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws.” (Hilton v. Guyot, supra, p. 164.)
While the obligation ’ of the laws of one State or nation within the territory of another is derived from the voluntary consent of the latter, still if not prejudicial to its interests or contrary or repugnant to its known policy, silence in respect of such rules or laws will warrant courts of justice in presuming the tacit adoption of them by their own G-overnment; and in determining the rights of persons under such foreign laws the courts will adopt them for that purpose. (Story’s Conflict of Laws, section 38.)
Rights thus determined become as fully settled as though adjucated upon by the courts of such foreign jurisdiction.
Had the Secretary of the Treasury paid, or caused to be paid, to the receiver the 131,000 standing to the credit of Price, the receipt of the receiver therefor would have exonerated the Treasury and been as complete-a defense to any claim thereafter made by Price as though it had been signed by him.
Hence, had the money been paid to the receiver after notice to the Secretary of his appointment, or to an administrator likewise appointed, the liability of the United States would thereby have been discharged. - (Vaughn v. Northrup, 15 Pet., 1.)
And this we say, though the restraining order issued by the supreme court of the District of Columbia was modified in respect of the creditors of Price resident in the District, as such restraining order, as originally entered or as modified, did not in any way restrain the Secretary or any other officer of the Treasury Department from paying the money to the receiver, and payment to the receiver would have exonerated the United States from any payment to such creditors, even after the modification of the restraining order,
*338 The only purpose or effect of the order was to restrain Price from receiving any part of the money; and when tbe order was modified, exonerating therefrom the sum of $7,900 due the creditors of Price resident within the District, the Secretary was not thereby relieved' from whatever obligation may have been imposed upon him by reason of the previous notice of the claimant’s appointment as receiver of the property and things in action of Price, and of the order of the chancery court' of New Jersey, still in force, restraining Price from collecting or receiving any draft or payment from the Treasury on account of said balance of $31,000.
The modification of the restraining order left Price .and his creditors resident within said District the same as though no restraining order had been granted, and did not in any way authorize Price or his creditors to collect money from the Treasury. If such right existed it was independent of the restraining order and the modification thereof. So that the failure or refusal of the Secretary to pay the money to the receiver could not well have been founded upon any supposable risk of having to pay the money again.
His refusal to pay the receiver, therefore, must have been based upon his supposed right in law to pay or not to pay'in the exercise of the discretion lodged in him; and having, as the head of an executive department, exercised his discretion by refusing to pay to the receiver, his action, the defendants contend, is conclusive upon the courts.
As between the States or as between the Federal Government and a foreign government there can be no question but that the principle for which the defendants contend would apply.
Do they, as between the Federal Government and a State? While the several States are territorially separate and distinct from each other, and possess sovereign rights and powers under the Constitution distinct from those of the Federal Government, they are nevertheless each an integral part thereof.
By virtue of the claimant’s appointment by the chancery court of New Jersey, as the receiver of the personal property of Price for the payment of an unsatisfied judgment, he thereby became entitled to the possession of all the personal *339 property and choses in action of which Brice was possessed or to which he was entitled at the time of his appointment, except such as may have been exempt-from levy and sale for the payment of debts and subject to the rights of creditors of Price resident within a foreign jurisdiction as to any property located therein. In other words, as" between Price and the receiver, the appointment divested Price of all right and title in and to his personal property and choses in action, wherever located, and clothed the receiver with the rights thus divested, subject to the future order of the court in respect of the rights of Price, after the payment of the judgment out of the property and choses in action so transferred.
Thus the receiver took the place of Price and thereby received “authority to possess, receive, and in his own name, as such receiver, sue for such property or things in action. ” (Revision Laws of N. J., 120.)
There is no controversy as to the authority and right of the receiver to possess himself of the personal property and choses in action of Price within the territorial jurisdiction of New Jersey, as such property passed to the receiver in virtue of his appointment under the adjudication of the courts of New Jersey without formal assignment by the debtor. (Harrison v. Maxwell, 44 N. J., 316.)
In the able brief of the counsel for the defendants it is conceded that “when both debtor and creditor and the property of the debtor are within the reach of one sovereignty, there is little room for contention,” but he contends “that the debt due from the United States to Price could not be transferred from Price to the claimant by the operation of the laws of New Jersey nor by any decree that the courts of New Jersey operating under such laws could make;” that such claim, he contends, ‘ ‘ could only pass by virtue of the laws of the United States.”
It becomes important, therefore, to. inquire' whether the claim of Price, a resident of New Jersey, as against the United States was an asset or chose in action as other personal property of the debtor within that State.
This question seems to be answered in the case of Vaughan v. Northup (15 Pet., 1, 6), where Mr. Justice Story, speaking for the court, said: “The debts due from the Government *340 of the United States have no locality at the seat of Government. The United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicile.” For the reason thus given it was held, in that case, that “the administrator of a creditor of the Government duly appointed in the State where he was domiciled at his death has full authority to receive payment and give a full discharge of the debt due to his intestate in any place where the Government may choose to pay it, whether it be at the seat of Government or at any other place where the public' funds are deposited.” And, furthermore, “that moneys so received constituted assets under that administration, for which he was accountable to the proper tribunals in Kentucky,” where he was appointed.
Under that decision debts against “the United States have no locality at the seat of Government; ” and if not there, then they have none in any particular locality and may be discharged whenever the Government may choose to pay them.
The claim due Price, therefore, was as much an asset in New Jersey as in the District of Columbia, and inasmuch as Price was domiciled in New Jersey, where he was personally served with process, such claim, at least as against the creditors of Price domiciled in the District of Columbia, passed to the receiver in virtue of his appointment, of which appointment such creditors had due notice.
Therefore the payment of the money or any part thereof by the Secretary of the Treasury to Price or to such creditors was in derogation of the settled law of New Jersey. (Miller v. McKenzie, 2 Stewart, 291.) Did not the claimant, as receiver, therefore have the right to collect the money? The right of Price to receive and possess himself of the money ceased to exist when the receiver was appointed, and he was, in addition thereto, restrained from so doing, of all which the Secretary of the Treasury was duly notified. Hence the only one in law, at least as against Price and such creditors, entitled to collect the money was the receiver.
The right of a receiver appointed bv a State court to main *341 tain an action in this court was sustained in tbe case of Redfield v. The United States (27 C. Cls. R., 393), following tbe decision in tbe case of Erwin v. The United States (97 U. S. R., 392); Goodman v. Niblack (102 U. S. R., 556).
It may be said, however, that inasmuch as the money sought to be reached in that case had not been paid to the creditor in whose favor it stood on the books of the Treasury after the receiver was appointed, that therefore the court, in the exercise of its judicial discretion within the rule announced in the case of Hilton v. Guyot (supra), might show comity to the State of New York, where the receiver was appointed, by adopting her laws in determining the rights of the receiver in respect of such claim.
But the main question settled in that case, from which no appeal was taken, was that the claim against the United States was, in virtue of the appointment of the receiver, transferred to him by operation of law; and if so, then it was by operation of the laws of the State of New York, where the receiver had been appointed, and he alone was entitled to receive the money thereon from the Treasury, as such transfer was not prohibited by the act of February 26, 1853 (10 Stat. L., 170, now Rev. Stat., sec. 3477). And when so paid to him the money became an asset in his hands for which he was accountable to the proper court in New York, as in the case of Vaughan v. Northup (supra).
Under section 1, Article XIY, of the Constitution the claimant was and' is a citizen of the United States as well as of the State wherein he resides, but the circuit and district courts of the United States within the several States are neither probate courts nor courts for the settlement of -the affairs of insolvent debtors, except in bankruptcy proceedings, and therefore many reasons exist why the Executive Departments, as well as the courts of the United States, should recognize as of binding force the laws of the several States in respect thereto.
In other words, the claimant, a citizen of the United States and of the State of New Jersey, wherein both he and Price reside and where the claim against the Government in favor of Price existed as a chose in action so far as it had local existence, was within the jurisdiction of the court of chancery in *342 New Jersey, and that being so the claim in favor of Price, as well as' his right to collect the money thereon from the Treasury, were transferred in law to the receiver upon his appointment. Prior thereto the chose 'in action was in Price and he could have maintained an action under the act of March 3, 1887 (24 Stat. L,, 505), in the United States circuit court in New Jersey. Thereafter can it be questioned but that such right was in the receiver?
In the case of Crescent City Live Stock Company v. Butchers’ Union Slaughter-House Company (120 U. S. R., 141, 146) the court cites with approval the case of JDupasseur v. Roche-reau (21 Wall., 130, 135), whore it was said: “No higher sanctity or effect can be claimed for the judgment of the.circuit court of the United States rendered in such a case, under such circumstances, than is due to the judgments of the State courts in a like case and under similar circumstances.”
See also the case of The Hancock National Bank v. Jonathan W. Farnum (176 U. S., 640), decided March 12, 1900, to the same effect.
The jurisdiction of the Court of Claims extends throughout the United States. “It issues writs to every part of the United States, and is specially authorized to enforce them.” (10 Stat. L., p. 612, sec. 3.) (Jones & Brown’s Case, 1 C. Cls. R., 383, 398.)
Since that decision it has been held, uniformly and invariably, in all questions relating to the validity of contracts, the title to property, the distribution of estates, and the proper party to prosecute a case, that this court is to all intents and purposes sitting in the State where the cause of action arose or where the claim accrued.
Congress has supplied the accounting officers with effective means in such a case as this to protect the Government. As long ago as 1870 a case of conflicting claimants arose and was referred to this court by the Secretary of War under section 1063, Revised Statutes... It was held that the court in such a case must assume jurisdiction and determine the conflicting rights, rendering final judgment for the one claimant and final judgment against the other. (Bright & Hutchings’s Case, 6 C. Cls. R., 118; 8 id., 326.) Since this, similar references, have been made by different heads of Executive Departments *343 and by the Comptroller of the Treasury, and always with the effect of fully protecting the Government.
This view we think is sustained by the Supreme Court in the case of Price v. Forrest (173 U. S. R,., 410, 422), wherein a controversy arose between the receiver, claimant herein, and the heirs of Price as to who was entitled to receive the money from the United States.
The heirs denied the jurisdiction of the chancery court of New Jerso3r to sequester the money in dispute in the. Treasury, and insisted that whatever remained there belonged to them. The court decided that the receiver was entitled to the money and restrained the heirs of Price and their attorney, John C. Pajq to whom they had giyen a power of attorney to collect and who was also a defendant in that case, as was the administrator of the estate of Price, from making any demand upon or application to the Government for the money, or from receiving the same from the Treasury or any officer thereof. On appeal to the court of errors and appeals, the decree was affirmed. (56 N. J. Eq.) -
The decree thus affirmed was reviewed in the Supreme Court, Mr. Justice Harlan delivering the opinion of the court, saying, in part: “The ultimate question in this case is whether the plaintiffs in error, as heirs of Rodman M. Price, are entitled to receive from the United States the amount standing to the credit of the deceased on the books of the Treasury, and which represents the balance of a sum found in his lifetime under the authority of a special act of Congress to be due him upon an adjustment of his account as a purser in the Navy.” Then, after stating the facts of the case as set forth in the findings herein, and reviewing the authorities construing section 3477, the court in relation thereto held that the transfer of the claim from Price “to the receiver was the act of the law. and whatever remained, whether of property or money, in his hands after satisfying the judgment,” etc., was to be disposed of according to the laws of New Jersey. Furthermore, on page 423, it is said:
“As this court has said, the object of Congress by section 3477 was to protect the Government and not the claimant, and to prevent frauds upon the Treasury. (Bailey v. United States, 109 U. S., 432; Hobbs v. McLean, 117 U. S., 567; *344 Freedmen's Savings Co. v. Shepherd, 127 U. S., 494, 506.) There was no purpose to aid those who had claims for money against the United States in disregarding- the just demands of their creditor's. We perceive nothing in the words or object of the statute that prevents any court of competent jurisdiction as to subject-matter and parties from making such orders as may be necessary or appropriate to prevent one who has a claim for money against the Government from withdrawing the proceeds of such claim from the reach of his creditors; provided such orders do not interfere with the examination and allowance or rejection of such claim by the proper officers of the Government, nor in anywise obstruct any action that such officers may legally take under the statutes relating to the allowance or payment of claims against the United States. If a court, in an action against such claimant by one of his creditors, should, for the protection of the creditor, forbid the claimant from collecting his demand except through a receiver, who should hold the proceeds subject to be disposed of according to law, under the order of court, we are unable to say that such action would be inconsistent with section 3477. It may be that the officers charged with the dut3r of allowing or disallowing claims against the Government are not required to recognize a receiver of a claim appointed bjr a court, and may, if the claim be allowed, refuse to make payment, except as provided in section 3477.”
That section, to prevent frauds against the Treasury, in substance provides that “all transfers and assignments made of any claim upon the United States,” and all powers of attorney for receiving payment of such claim, shall be null and void unless “freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.” And yet in construing that section the court in the case of Baily and others v. The United States (109 U. S. R., 433, 439) held, in substance, that the statute was for the protection of the Government, and that payment made to an attorney in fact, constituted such by power of attorney executed before the allowance of a claim, was good as between the Government and such claimant if such power of attorney had not been revoked at the time of payment.
In the case of Erwin v. United States (supra), where cotton had been captured by the military forces of the United States and sold and the proceeds paid into the Treasury, the claim *345 of tbe owner thereto was held to be property which passed to his assignee in bankruptcy, and that under the section of the statute referred to the passing of claims to heirs, devisees, or assignees in bankruptcy was not prohibited thereby; that the transfer of title by operation of law took the case out of the statute.
In the case of Goodman v. Niblack, (supra) a voluntary assignment for the benefit of creditors was upheld, the court, at p. 561, saying: “There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the Government can be embarrassed by such an assignment; ” that such a transfer was not “within the evil which Congress sought to suppress by the act of 1853.”
Referring again to the case of Price v. Forrest {supra), the court, quoting the opinion of the Second Comptroller to the effect that the chancery court of New Jersey could not compel payment to the receiver of the money in the Treasury to the credit of Price, says: “Even if it be true that the final order of the State court in relation to the money in question would not impose any legal duties upon the, officers of the Treasury, it does not follow that the order of the court appointing the receiver would be null and void, as between those who are parties to the cause and who are before the court.”
Therefore, as between the parties to the suit who were before the court, the receiver was entitled to the money in the Treasury due Price. If so, can it be held that the Treasury officials, who had due notice not only of the appointment of the receiver but of the order restraining Price from collecting the money, ma}1' or may not disregard such order, in the absence of any claim against Price by way of offset?
This they did and paid the mone}7 to Price in disregard of the order of the chancery- court of New Jersejr. There being-no purpose to aid those who have claims against the Government “in disregarding the just demand of their creditors,” and as there is nothing to prevent “any court of competent jurisdiction as to subject-matter and parties from making such orders as may be necessary or appropriate to prevent one who has a claim for money against the Government from withdrawing the proceeds of such claim from the reach of his creditors,” there is certainly no reason in law why a court in an action against such debtor by one of his creditors should *346 not forbid such debtor “from collecting his demand except through a receiver who should hold the proceeds subject to be disposed of according to law under the order of court” (Revision of N. J. Laws, 1877, sec. 26, p. 394); and such action, the court say, would not be inconsistent with section 3477.
If not inconsistent therewith,- then it follows, it seems to us, that the transfer of the claim by operation of law takes the place of .the voluntary transfer provided for in said section and clothes the receiver with the ultimate right to collect the money from the Treasury, as otherwise the purpose of the appointment of the receiver could be defeated by the refusal of the Treasury officials to recognize him as such. The transfer by operation of law, therefore, can only be made effective by payment of the money to the receiver bjr the Treasury, and in doing this the Government runs no risk, for payment to the receiver is as complete a discharge as though paid to the original creditor. (Goodman v. Niblack, supra.)
In reaching the conclusion we have, we are not unmindful that as between the States and as between the Federal Government and a foreign government a different rule prevails, and but for the decisions to which we have referred we should be inclined to follow the rule otherwise so well established.
If we are mistaken in our view as to the effect of the decisions upon -which we have relied, an opportunity will be presented for a review thereof on appeal as to whether they do apply to the precise question in this case, which, so far as we are aware, has never been presented to the Supreme Court — - i. e., the question as to whether the Treasury officials have the right in law to pay a creditor of the Government after the appointment, by a State court of competent jurisdiction, of a receiver of the property and things in action of such creditor, domiciled in such State, for the payment of his debts after due notice thereof.
Therefore, for the reasons we have given, we must hold that the claimant was entitled to receive from the Treasury the money which was due Price, and that payment thereof to Price did not discharge the defendants from their obligation to the receiver after notice of his appointment and of the order restraining Price from receiving the money, and he is therefore entitled to recover the sum of $7,900, for which amount judgment is ordered to be entered.