Littleton, Judge,
delivered the opinion of the court: The plaintiff, Julius Hartmann, a citizen of the Confederation of Switzerland and a resident of the city of Lucerne, instituted this suit as the duly appointed, qualified, and acting executor under the last will and testament of Annie C. Grun, deceased, who, until the time of her death on October 11, 1934, was a non-resident alien and a citizen of Switzerland residing at Lucerne. Annie C. Grun left a ■last will and testament, and codicil thereto, which were duly admitted to probate and established pursuant to the laws and usages of Switzerland and of the city of Lucerne, Switzerland, in the Probate Court of the city of Lucerne, -the will being dated April 29, 1930, and the codicil thereto being dated September 20, 1934. The plaintiff, Julius Hartmann, who was named as executor in the will and ■codicil, was duly and legally appointed as such executor October 16, 1934, by the Probate Court of the city of Lucerne, Switzerland. The Probate Court possessed full and lawful jurisdiction to appoint plaintiff as such executor and, as such executor, plaintiff was, and is, authorized and empowered to collect, receive, and administer the property, rights, choses in action, causes of action, money, and other assets of the decedent’s estate, including the right to enforce any alleged claim or claims, or causes of action, appertain *581 ing to the ownership of the property by the decedent, Annie C. Grun. Hartmann duly accepted the appointment as executor and continuously thereafter has been, and now is, the duly qualified, lawful, and acting executor of the estate of Annie C. Grun.
The facts upon which the suit is based are alleged in the petition and need not be stated here. The suit involves a claim for damages by reason of the refusal of the United States to pay to the estate of the decedent $1,420,000, the principal amount of the First Liberty Loan 3gold bonds in United States gold coin of the standard value as of June 15, 1917, or to pay the estate the equivalent in legal tender currency in lieu of such gold coin; and further by reason of the failure of the defendant to pay the estate the total of the interest in United States gold coin or the equivalent in legal tender currency in lieu of such gold coin.
On May 5,1980, the decedent became and, until her death, remained the legal and beneficial holder and owner of United States First Liberty Loan, 3%%, gold bonds in the principal amount of $1,420,000, payable as to principal and interest in United States gold coin of the standard value as ■of June 15, 1917. These bonds, in the principal amount .mentioned, were registered in the name of Annie C. Grun and were duly delivered to her at her residence at Lucerne, .Switzerland, and there remained in her possession up to and including the date of her death, after which possession and ownership of the bonds passed to plaintiff as executor.
Counsel for defendant filed a motion to dismiss the petition on the ground that Julius Hartmann, as an executor •duly appointed by a court of Switzerland, is without capacity to sue the United States. After consideration of briefs :and argument, the court entered an order November 1', 1937, overruling the motion to dismiss. Thereafter counsel for defendant filed a motion for reconsideration of the motion to dismiss and asked that the previous order overruling the motion to dismiss be vacated and set aside and that the petition be dismissed. The motion for reconsideration is based upon the same grounds and the same argument relied upon in support of the motion dismissed, except that *582 the motion alleges that the petition should be dismissed for the reason that it fails to allege that an executor appointed by a court of the United States has the right, in his representative capacity, to'prosecute claims against the Confederation of Switzerland. We think the petition sufficiently alleges all the facts necessary to give this court jurisdiction if Julius Hartmann, a citizen of Switzerland, is entitled to institute and maintain this suit as executor of the estate of the decedent who was also, at the time of her death, a resident and citizen of Switzerland.
The argument in support of the motion to dismiss is based upon decisions -which establish the rule that in the ahsenee of a statute, permitting it, an administrator or executor appointed in one state cannot sue, in his representative capacity, in the courts of another state. While admitting that an administrator or executor appointed in any state of the United States may institute and maintain a suit against the United States in this court in his representative capacity without securing ancillary letters of administration in any other state or the District of Columbia, it is, nevertheless, contended that this rule does not apply to the case at bar and that the first rule mentioned applies to suits in this court by an administrator or executor appointed under the laws of a foreign country. The defect in the arguments of counsel for the defendant in support of the motion to dismiss is that laws of the United States creating this court and defining its jurisdiction authorize this court to hear and determine all claims, and also authorize aliens to prosecute suits against the United States'upon claims against our Government, of which claims this court, by reason of their subject matter, has jurisdiction. This is a clear and unequivocal statutory provision whereby the United States permits aliens, who are proper parties to prosecute a claim of the character involved in a suit against the United States within the jurisdiction of this court, to institute and maintain a suit upon such claim in the same manner and to the same extent as such claims might be instituted and maintained by native citizens. Nowhere in the statutes authorizing suits in this court is there to be found any provision which directly, or by implication, limits suits by aliens to suits brought by individuals *583 in their individual capacity, and we may not engraft upon the statute an exception that it shall not apply to suits instituted by an alien who is the legally appointed, qualified, acting executor of the estate of a deceased alien. We think it is clear that, with certain exceptions not material here, no distinction was intended to be made between suits in this court by native citizens, whether acting in an individual or representative capacity, and such suits by aliens. No good reason appears for such distinction and we think it is clear that if Congress had intended that such a distinction be made it would have so provided in language sufficiently clear not to be misunderstood. See Borcherling v. United States, 35 C. Cls. 311, 185 U. S. 223; Rutherford v. United States, 27 C. Cls. 539; King, Administrator of Wilson, v. United States, 27 C. Cls. 529; Beale on “Conflict of Laws” (1935), p. 1462, par. 467, 468; Thomas v. United States, 15 C. Cls. 335; Hilton v. Guyot, 159 U. S. 113, 133; Pennoyer v. Neff, 95 U. S. 714. In the last-mentioned case the court said that “Whilst they [United States courts] are not foreign tribunals in their relations to the State courts, they are tribunals of a different sovereignty exercising a distinct and independent jurisdiction.”
Moreover, there is an additional reason for denying the motion to dismiss in the case at bar. In the treaty between the United States of America and the Swiss Confederation of November 24, 1850, it was provided in Art 1, as follows:
The citizens of the United States of America and the citizens of Switzerland * * * shall have free access to the tribunals and shall be at liberty to prosecute and defend their rights before courts of justice in the same manner as native citizens, * * *.
Inasmuch as any citizen of the United States may prosecute a suit in this court in his representative capacity without obtaining ancillary letters of administration in any other state or the District of Columbia, the same privilege must be granted to a citizen of Switzerland.
In addition to what has been stated above, it should be pointed out that the original jurisdictional act of the Court of Claims provided that “And the said court sba.ll hear and determine all claims founded upon any law of Congress, *584 * * * or upon any contract, express or implied, with, the government of the United States.” [Italics supplied.] Clearly this language is broad enough to include claims-not only by citizens of the United States but by aliens,, whether suits upon such claims be instituted individually or in a representative capacity. See Wagner v. United States, 5 C. Cls. 637. Under the above-quoted jurisdictional Act of February 24, 1855, suits of the character here involved were clearly within the jurisdiction of the court, and that jurisdiction still continues and has never been modified except in certain particulars by the Act of March 12, 1863, 12 Stat. 820, 821, and the Act of July 27, 1868, 15 Stat. 243, not material here. See United States v. New York & O. S. S. Co., Ltd., 216 Fed. 61, 64, in which the court said:
In 1855 Congress created the Court of Claims (Act February 24, 1855, C. 122, 10 Stat. L. 612, 614) and conferred upon it jurisdiction to hear and determine “all claims” of the character enumerated in the Act. There was nothing in the Act distinguishing claims by aliens from claims brought by citizens. In 1863; Congress passed the captured and abandoned property act. (Act March 12, 1863, C. 120, 12 Stat. L. 820, 821 >• which authorized “any person” who claimed as owner of any such property to prefer his claim for the proceeds-thereof in the Court of Claims. Under this Act it was-held that aliens could file such claims, and the Court appears to have been of the opinion that it had jurisdiction of any suit brought by an alien. ScharfeSs case,. 4 Ct. Cl. 529-532: Wagner’s case, 5 Ct. Cls. 637, 638.
In 1868 Congress forbade the bringing of any suit in-any Court by an alien under the captured and abandoned' property act. (Act July 27, 1868, C. 276, 15 Stat. L. 243). It contained, however, a provision that: “This section shall not be construed so as to deprive aliens who-are citizens or subjects of any government which accords-to citizens of the United States the right to prosecute-claims against such government in its courts, of the. privilege of prosecuting claims against the United States, in the Court of Claims, as now provided by law.”
The express grant of authority to this court to hear and determine all claims of the character specified, of which this claim is one, certainly cannot be construed to mean all claims *585 except a instituted by an alien as the duly appointed, qualified, and acting executor of the estate of a deceased alien citizen. The provisions of section 9 of' the Act of March 3, 1863, supra, and the provisions of the Act of July 27, 1868, quoted in United States v. New York & O. S. S. Co., Ltd., supra, are evidences of the recognition by Congress that, prior to the dates mentioned, aliens had the-right, without restriction, to prosecute in this court claims, within its jurisdiction. Section 9 of the Act of 1863 took away the jurisdiction of this court of any claim against the-United States in any suit instituted subsequent to December 1,1863, growing out of or depending upon any treaty stipulation entered into with a foreign nation, and the Act of 1868-simply restricted the right of citizens of other governments, to sue to those citizens whose government accorded American, citizens the right to prosecute claims against such governments in their courts. After 1868 the jurisdiction of this court still extended to all claims founded upon any law of' Congress or upon any contract with the United States, and such jurisdiction included, we think, by express provision of; law, a suit by a non-resident alien citizen in his representative capacity. See Vaughan v. Northrup, 15 Peters 1.
The motion to vacate the order entered November 1, 1937,.. overruling the motion to dismiss is accordingly denied.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and:. Booth, Qhief Justice, concur.