## ARKANSAS DEPARTMENT OF HUMAN SERVICES
### *v.* Mary FARRIS and Henry Calvin Miller

92-360                                              832 S.W.2d 482

Supreme Court of Arkansas
Opinion delivered June 15, 1992

*Vickie A. Warner*, for appellant.

*David J. Manley*, for appellee. .

JACK HOLT, JR., Chief Justice. The Arkansas Department of Human Services (DHS) appeals from the White County Chancery Court's (Juvenile Division) finding that it did not have personal jurisdiction over the appellee, Henry Calvin Miller, for purposes of terminating Mr. Miller's parental rights. We disagree with the chancellor and reverse.

In 1984, Mary Miller, the mother of the children involved in this lawsuit, was killed by her husband, Henry Calvin Miller, in Mississippi. The children, Theresa Farris, Lora Farris, David Miller, and Amanda Miller, were subsequently brought to Arkansas to reside with their maternal grandmother, Mary Linder. Mr. Miller has been continuously incarcerated in the Mississippi State Penitentiary.

On December 2, 1989, DHS filed a dependency/neglect petition in the White County Chancery Court pursuant to Ark. Code Ann. § 9-27-310 (Repl. 1991) and obtained emergency custody of the children based on allegations by Amanda, Lora,

and Theresa that they had been sexually abused by relatives of Mary Linder's husband.

After being served with notice of the dependency/neglect proceeding, Mr. Miller filed a *pro se* motion for appointment of counsel and was appointed an attorney from Legal Services of Arkansas. Thereafter, Mr. Miller was represented at various adjudication and six-month review hearings. Mr. Miller's counsel actively participated in the proceedings and voiced Mr. Miller's objection to returning the children to Mrs. Linder's home. During the course of an adjudication hearing on March 14, 1990, Mr. Miller objected to the trial court's jurisdiction over him as to possible termination of his parental rights. No finding was made by the trial court in this regard.

On June 18, 1991, some eighteen months after the children were taken into custody, a hearing was conducted to determine a new disposition in the case as required by Ark. Code Ann. § 9-27-338 (Repl. 1991). DHS asked the court for permission to proceed with termination of Mr. Miller's parental rights in order to seek adoptive placement for the children. Mr. Miller's attorney argued, as in the March 14 proceeding and subsequent hearings, that the court did not have personal jurisdiction over him for this purpose and that Mr. Miller wished the children to remain in long-term foster care.

By order filed July 25, 1991, the chancellor stated that DHS was required to request that it be allowed to file a petition to terminate parental rights, "that the department made such a request on this date and that request is hereby denied. . . ." The court found Mr. Miller did not have sufficient minimum contacts with this state and that the court lacked personal jurisdiction to terminate Mr. Miller's parental rights. The chancellor further stated the order was considered "final" and that if DHS wished to proceed with termination of parental rights, it would have to file a petition in the state of Mississippi. The chancellor approved long-term foster care and scheduled another six-month review hearing.

DHS now appeals, arguing that by filing pleadings in the case and participating in the proceedings, Mr. Miller entered a general appearance thereby subjecting himself to the chancery court's jurisdiction.

■■ Before discussing the merits, we first address Mr. Miller's assertion that the July 25 order is not a final, appealable order and·is simply an advisory opinion.

Ark. R. App. P. 2 provides in pertinent part:

(a) An appeal may be taken from a circuit, chancery, or probate court to the Arkansas Supreme Court from:

1. A final judgment or decree entered by the trial court;

2. An order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action;

In order for a judgment to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Arkansas Dept. of Human Serv.* v. *Lopez*, 302 Ark. 154, 787 S.W.2d 686 (1990). At· the July hearing, DHS's sole recommendation was that the court approve proceedings to terminate Mr. Miller's parental rights. Under Ark. Code Ann. § 9-27-306(a)(4) (Repl. 1991), the juvenile court has exclusive jurisdiction over such proceedings. The chancellor's order, quoted above, specifically recited that the chancery court lacked personal jurisdiction over Mr. Miller and that any petition for termination of parental rights would have to be filed in Mississippi. This language was more than "advisory." The order decisively concluded the right of DHS to file for termination of parental rights in Arkansas and was, therefore, final and appealable.

On the merits, we agree with DHS that Mr. Miller waived his objection to personal jurisdiction.

■■ DHS cites several earlier cases discussing the difference between general and special appearances. We note, however, that this distinction was abolished with the adoption of the Arkansas Rules of Civil Procedure in 1979. *See Bituminous, Inc.* v. *Uerling*, 270 Ark. 904, 607 S.W.2d 331 (1980); Ark. R. Civ. P. 12(b) and Reporter's Notes to Rule 12, No. 7. "As long as a party either moves to dismiss [or objects for lack of personal jurisdiction] before pleading on the merits or combines the objection to jurisdiction with the response on the merits, the objection is preserved. . . . This procedure obviates the 'special appear-

ance.' " D. Newbern, *Arkansas Civil Practice and Procedure* § 11-3 (1985); Rule 12(b). Otherwise, the defense is waived. Rule 12(h)(1). Another option (not applicable here) would simply be to fail to appear or to contest jurisdiction. *Newbern, supra.*

Mr. Miller responded on the merits of the case, at least twice, before asserting the court lacked *in personam* jurisdiction. First, he filed a *pro se* motion seeking appointment of counsel, shortly after receiving notice of the dependency/neglect proceedings in December 1989. Second, on February 16, 1990, Mr. Miller filed a response to a motion to intervene by a Mr. Charles Gardner. Mr. Gardner asserted he was the putative father of Amanda Miller and that he was a fit and proper person to have custody of the child. Mr. Miller responded that under Arkansas law, his marriage to Amanda's mother at the time of Amanda's conception and birth was presumptive of his paternity. He argued Mr. Gardner had no standing to proceed in the action and requested denial of the motion to intervene. In neither of these pleadings did Mr. Miller assert a jurisdictional defense. The record also reflects Mr. Miller was represented at an adjudication hearing on February 14, 1990. The transcript contains only a copy of the court's order pertaining to this hearing, however, and we cannot determine whether or not Mr. Miller raised the issue of jurisdiction at that time.

It was not until March 14, 1990, that Mr. Miller, through his attorney, first voiced his objection to personal jurisdiction. On that date, the parties attended another adjudication hearing, extended from the February hearing, to further resolve matters of custody and visitation, etc. Mr. Miller's counsel conceded the chancery court could adjudicate custody of the children but asserted that if the case proceeded to termination of Mr. Miller's parental rights, the court had no personal jurisdiction in this regard. This objection was too late.

Mr. Miller argues that under the Uniform Child Custody Jurisdiction Act (UCCJA), Ark. Code Ann. § 9-13-201 through 227 (Repl. 1991), the trial court was not required to obtain personal jurisdiction over him to determine custody of his children and he has never disputed general jurisdiction for that purpose. Mr. Miller objects to jurisdiction only with regard to the

permanent termination of his parental rights, and that objection, he argues, was adequately preserved at the March 14 hearing.

■ As previously mentioned, Ark. Code Ann. § 9-27-306 gives the juvenile court exclusive, original jurisdiction of proceedings in which a juvenile is alleged to be dependent-neglected and specifically, under provision (a)(4), jurisdiction over proceedings for termination of parental rights of a juvenile who is under its jurisdiction. In addition, under section (4)(b) and (4)(b)(1), the juvenile court has exclusive jurisdiction "of . . . matters governed by other law which arise during the pendency of the original proceedings under subsection (a)", which includes "Adoptions under the Revised Uniform Adoption Act, as amended, § 9-9-201."

■ Apparently Mr. Miller considers the two pleadings filed prior to the March 14 hearing as relating only to the issue of custody and therefore his appearance in those pleadings would not effect a waiver of his argument concerning personal jurisdiction to terminate parental rights. Mr. Miller cannot so confine the purpose of his appearances. Once he filed pleadings with the court seeking affirmative relief on the merits of the case, and accepted counsel, who represented him in all phases of the proceedings, he cannot now complain that the court did not have personal jurisdiction over him for the subsequent purpose of terminating his parental rights.

Since we find Mr. Miller had submitted himself to the jurisdiction of the court, we need not address the parties' arguments concerning whether Mr. Miller had sufficient minimum contacts with this state.

Reversed and remanded for proceedings consistent with this opinion.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I agree with the result reached by the majority. First, the majority correctly holds the July 25 order from which this appeal springs is a final one. I believe the order is appealable for two reasons. One, the order resulted from an eighteen-month dispositional hearing required under Ark. Code Ann. § 9-27-338 (Repl. 1991). This is a "fish or cut bait" hearing in a dependent-neglect proceeding when the

court must enter one of the following dispositions:

> (1)   Return the juvenile to the parent, guardian, or custodian;

> (2)   Authorize a plan for the termination of the parent-child relationship, guardianship, or custody;

> (3)   Place the juvenile in long-term foster care; or

> (4)   Allow the juvenile to continue in an out-of-home placement for a specified, limited period of time.

Here, the trial court found Mr. Miller failed to comply with the terms of the court's case plan and efforts to rehabilitate and reunify the family had failed because Mr. Miller was incarcerated and had not maintained any direct contact with the children. Nonetheless, the court declined to authorize DHS to terminate Miller's parental rights because the court concluded it had no personal jurisdiction over Miller, since he resided in Mississippi. The court's ruling in effect concluded DHS's dependent-neglect proceeding as it pertained to Miller, leaving DHS to appeal the court's decision. In fact, DHS's failure to appeal in these circumstances would have left the court's jurisdictional ruling as the law of the case. In sum, the dispositional hearing and decision is considered one of finality and the trial court's ruling also was final, considering it had yielded or ceased any jurisdiction the court had over Miller, DHS clearly had the right to challenge those rulings by appeal.

Next, I agree with the majority decision that once Miller filed pleadings seeking affirmative relief with the trial court, he cannot complain the court did not have personal jurisdiction over him for the purpose of terminating his parental rights. When he entered his appearance in the dependent-neglect proceeding, Miller was made aware that his failure to remedy the conditions causing the out-of-home placement of his children might result in the termination of his parental rights. After DHS gains custody of a juvenile, it must prepare a written case plan within thirty days of the juvenile's placement. Ark. Code Ann. § 9-27-335 (Repl. 1991). In accordance with Ark. Code Ann. § 9-27-335(H) (Repl. 1991), that case plan includes a statement directed to the juvenile's parent, custodian, or guardian and notifies them as follows:

(i)  *Failure to remedy the conditions causing the out-of-home placement of the juvenile may result in termination of parental rights*;

(ii)  *Termination of parental rights may occur only after notice and a hearing on termination*;

(iii)  If the parent, guardian, or custodian disagrees with the terms in the plan, the party may petition the court for resolution of the disagreement, and

(iv)  The parent, guardian, or custodian has a right to notice of any modification of the case plan and the right to petition the court for a hearing on the modification. (Emphasis added.)

Upon the failure of a parent to correct the conditions causing his or her child's removal from home, the juvenile court reviewing the dependent-neglect proceeding may then consider DHS's petition to terminate parental rights, and upon terminating such rights, it may authorize DHS to consent to the adoption of the juvenile. Ark. Code Ann. § 9-27-341 (Supp. 1991).

In sum, under Arkansas's statutory scheme, a parent is afforded notice shortly after the dependent-neglect proceeding is commenced that the parent's rights to his or her child may be terminated by the juvenile court if the parent fails to comply with DHS's case plan as was approved by the court. Such due process having been given Miller in this case, he cannot subject himself only to part of the dependent-neglect proceeding provided by law, but then attempt to avoid the juvenile court's jurisdiction once the juvenile court determines that he and his children should not be reunified. Miller entered his appearance in these proceedings and the juvenile court had jurisdiction to decide those issues related to dependency-neglect, termination of parental rights and adoption. *Id.*, *see also* Ark. Code Ann. § 9-27-306 (Repl. 1991). To construe Arkansas's Juvenile Code to permit parents to limit their appearances to one stage of these proceedings would serve only to frustrate a court from achieving the purposes of the Code — to remove a juvenile from his parents only when his welfare or safety cannot be safeguarded and to assure the juvenile is permanently placed in an approved family home and be made a member of the family by adoption if the juvenile must be

permanently removed from his family. Ark. Code Ann. § 9-27-302 (Repl. 1991).

For the foregoing reasons, I join the majority in reversing and remanding this cause for further proceedings.