GOLDEN RULE INSURANCE COMPANY, Plaintiff-Appellant, v. GERSON F. WIDOFF *et al.*, Defendants (Gerson F. Widoff, as Personal Representative of the Estate of Rosemarie Widoff, Deceased, Defendant-Appellee).

Second District    No. 2—96—1206

Opinion filed August 8, 1997.—Rehearing denied September 8, 1997.

Erik D. Gruber, of William J. Harte, Ltd., of Chicago, and David A.

Anderson, of Anderson & Associates, P.C., of Indianapolis, Indiana, for appellant.

Martin J. Coonen, of Coonen & Roth, Ltd., of Crystal Lake, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Golden Rule Insurance Company, appeals the dismissal of its action against defendant, Gerson F. Widoff, as the personal representative of the estate of Rosemarie Widoff (personal representative). Plaintiff argues that the trial court improperly found that it did not have jurisdiction to enjoin the personal representative of a foreign estate from distributing the assets of that estate.

The facts are drawn from the pleadings. In June 1995, defendant Gerson Widoff was traveling in a car with Rosemarie Widoff, Valanna Widoff, and defendant Betty Widoff. Betty is Gerson's wife and Rosemarie was his mother. The Widoff car was struck by a vehicle driven by Gary Sokoloski. Amanda Moeller was a passenger in Sokoloski's vehicle. Both Sokoloski and Rosemarie died at the accident scene. Gerson and Betty sustained serious personal injuries.

Gerson and Betty were insured by plaintiff. Pursuant to that insurance policy, plaintiff paid $184,215.86 towards Gerson's medical expenses and $48,011.85 towards Betty's.

Eventually, the injured parties entered into a settlement agreement with State Farm Insurance Company, the insurer of Sokoloski's vehicle. Pursuant to the agreement, State Farm paid $1,000 each to Gerson, Betty, Valanna, and Moeller. State Farm then paid $296,000 to Rosemarie's estate.

After discovering the nature of the settlement, plaintiff filed suit against Gerson and Betty, individually, and Gerson, as the personal representative of Rosemarie's estate. The first count of plaintiff's complaint alleges that the insurance contract between it and Gerson and Betty provides that, in the case of a settlement with a tortfeasor, Gerson and Betty must reimburse plaintiff the lesser of either the amount paid by plaintiff or 50% of the settlement. Plaintiff's first count alleges that Gerson and Betty breached their contract with plaintiff by deliberately structuring the settlement in a manner that prevents plaintiff from being reimbursed. In particular, plaintiff alleges that both Gerson and Betty suffered significant injuries yet they received only $2,000, while Rosemarie had no medical expenses and her estate received $296,000.

Plaintiff's second count alleges that Gerson and Betty committed fraud in structuring the settlement agreement. In support of this allegation, plaintiff alleges that, since Gerson is one of three beneficia-

ries of Rosemarie's will, Gerson and Betty will receive the benefit of the $296,000 paid to Rosemarie's estate while avoiding having to reimburse plaintiff. Plaintiff's third count seeks to enjoin Gerson, as the personal representative of Rosemarie's estate, from distributing the funds received as a result of the settlement.

Plaintiff alleges that Gerson and Betty were twice served by substitute service (see 735 ILCS 5/2—203(a)(2) (West 1996)). The record, however, contains no return of service to support this allegation. Subsequent to the time plaintiff alleges that service was made, Gerson, in his individual capacity, and Betty entered a general appearance. At the same time, Gerson, in his representative capacity, entered a special appearance (735 ILCS 5/2—301 (West 1996)). The personal representative alleged that because Rosemarie was a resident of Florida and because her estate is in Florida, the trial court had no jurisdiction to enjoin the personal representative from distributing the estate. The trial court agreed and dismissed the action against the personal representative. The dismissal order stated that no just reason existed to delay the enforcement or appeal of the order (see 155 Ill. 2d R. 304(a)). Plaintiff filed a timely notice of appeal.

The question presented here is one of first impression in Illinois. Moreover, our research has not revealed a similar case from another jurisdiction. Unfortunately, the arguments presented by both parties are vague and inadequate to address an issue of first impression.

■ Traditionally, the personal representative of a foreign estate could only be sued in the jurisdiction in which he was appointed. 31 Am. Jur. 2d *Executors & Administrators* § 1333 (1989). In so holding, the courts reasoned that a personal representative had no extraterritorial authority and, therefore, could not be sued outside of the jurisdiction in which he was appointed. 31 Am. Jur. 2d *Executors & Administrators* § 1333 (1989). Of additional concern was the public policy of not interfering with the administration of assets in a foreign state. 31 Am. Jur. 2d *Executors & Administrators* § 1333 (1989).

This traditional rule has been modified by statutes allowing long-arm jurisdiction. 31 Am. Jur. 2d *Executors & Administrators* § 1337 (1989); see, *e.g.*, 735 ILCS 5/2—209 (West 1996) (Illinois long-arm statute). These statutes allow a court to obtain jurisdiction over the personal representative of a foreign estate in order to determine whether the estate is liable for a tort committed by the decedent in the forum state. 31 Am. Jur. 2d *Executors & Administrators* § 1337 (1989).

Our review of the law in this area reveals that the claims that typically subject the personal representative of a foreign estate to ju-

risdiction are qualitatively different from the claim plaintiff is asserting against Rosemarie's estate. For example, the Illinois long-arm statute provides a list of 14 different activities that provide long-arm jurisdiction. 735 ILCS 5/2—209(a) (West 1996). This list encompasses five general categories of activities: (1) the transaction of business or the making or performance of a contract in Illinois; (2) insuring a person, property, or a risk located in Illinois; (3) committing a tortious act in Illinois; (4) exercising ownership of, use of, or possession of property in Illinois; and (5) committing certain acts in Illinois relating to domestic relations. 735 ILCS 5/2—209(a) (West 1996). Cases from other jurisdictions reveal a similar pattern. See Annotation, *State Statutes or Rules of Court Conferring In Personam Jurisdiction over Nonresidents on the Basis of Isolated Acts or Transactions within State as Applicable to Personal Representative of Deceased Nonresident*, 19 A.L.R.3d 171 (1968) (for a discussion of actions brought against foreign personal representatives). Our review of the cases involving long-arm jurisdiction reveals the common thread that the plaintiff seeks to hold the estate liable for some action or activity performed by the decedent in the forum state.

In this case, however, plaintiff's claim against Rosemarie's estate is of an entirely different character. The difference here is that plaintiff is not seeking to hold Rosemarie's estate liable for anything. Indeed, plaintiff has not alleged that Rosemarie committed any act that would render her estate liable to plaintiff. Instead, plaintiff desires an Illinois court to control the distribution of the assets of a Florida estate.

Plaintiff argues that the court has jurisdiction to issue the injunction because it can obtain *in personam* jurisdiction over the personal representative, an Illinois resident. An examination of the varying types of jurisdiction, however, reveals that plaintiff's claim does not require *in personam* jurisdiction over the personal representative but, rather, quasi *in rem* jurisdiction over the assets of the estate.

■ The Supreme Court explained in *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), that three possible types of jurisdiction exist. *In personam* jurisdiction anticipates the imposition of "a personal liability or obligation on one person in favor of another." *Hanson*, 357 U.S. at 246 n.12, 2 L. Ed. 2d at 1293 n.12, 78 S. Ct. at 1235 n.12. *In rem* jurisdiction "affects the interests of all persons in [the] designated property." *Hanson*, 357 U.S. at 246 n.12, 2 L. Ed. 2d at 1293 n.12, 78 S. Ct. at 1235 n.12. Quasi *in rem* jurisdiction "affects the interests of particular persons in [the] designated property." *Hanson*, 357 U.S. at 246 n.12, 2 L. Ed. 2d at 1293 n.12, 78 S. Ct. at 1235 n.12. Two types of quasi *in rem* actions exist. In one,

the plaintiff seeks "to secure a pre-existing [*sic*] claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons." *Hanson*, 357 U.S. at 246 n.12, 2 L. Ed. 2d at 1293 n.12, 78 S. Ct. at 1235 n.12. In the other, the plaintiff seeks to use the defendant's property to satisfy a judgment or claim. *Hanson*, 357 U.S. at 246 n.12, 2 L. Ed. 2d at 1293 n.12, 78 S. Ct. at 1235 n.12.

■ Plaintiff here is clearly not seeking a "personal" obligation from either the personal representative or Rosemarie's estate. Instead, plaintiff seeks to control the distribution of the assets of Rosemarie's estate. Therefore, plaintiff is attempting to preclude others, namely, the beneficiaries of Rosemarie's will, from receiving the money until *after this action is resolved*. Such an attempt is intended to establish plaintiff's right to the money while extinguishing any claim that Rosemarie's beneficiaries have to the money. Thus, plaintiff's claim requires quasi *in rem* jurisdiction.

As the Supreme Court explained, the basis of *in rem* and quasi *in rem* jurisdiction "is the presence of the subject property within the territorial jurisdiction of the forum State." *Hanson*, 357 U.S. at 246, 2 L. Ed. 2d at 1293, 78 S. Ct. at 1236. Here, no credible argument can be made that the subject property, the money received by the estate, is present anywhere but in Florida. Since the money is present only in Florida, an Illinois court has no basis to exercise quasi *in rem* jurisdiction over it.

Plaintiff does not argue that the money is in Illinois. Instead, even though plaintiff does not explicitly state so, it appears to be attempting to invoke an exception that allows a court indirectly to exercise control over foreign property by using its equitable powers to compel a party over whom it has *in personam* jurisdiction "to do some act in relation to the property in accordance with the laws of the State where the property is situated." *Chirekos v. Chirekos*, 33 Ill. App. 3d 606, 609 (1975).

This exception may only be exercised, however, if (1) the equitable order is incidental to the claim being brought; and (2) the court has *in personam* jurisdiction over all of the interested parties. *De Licea v. Reyes*, 87 Ill. App. 3d 704, 707 (1980); *Chirekos*, 33 Ill. App. 3d at 609; *In re Estate of Hansen*, 109 Ill. App. 2d 283, 292 (1969).

In this case, the problem is that the court does not have jurisdiction over all of the interested parties, namely, the beneficiaries of Rosemarie's will. In addition to Gerson, Gerson's brother (Michael Widoff) and a trust are beneficiaries of Rosemarie's will. Not only has plaintiff never attempted to obtain *in personam* jurisdiction over Michael, but plaintiff has not even identified either the trustee or the

beneficiary of the trust, let alone attempted to obtain *in personam* jurisdiction over either of them.

Since the court does not have *in personam* jurisdiction over all of the interested parties, this exception cannot provide the court with the jurisdiction necessary to enjoin the distribution of the assets of Rosemarie's estate.

We may affirm a judgment on any legal grounds that have factual support in the record, even if those grounds were not raised before the trial court. *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 887 (1993). After reviewing the record, we conclude that plaintiff is requesting the trial court to exercise quasi *in rem* jurisdiction over Rosemarie's Florida estate. Since an Illinois court has no basis to do so, we must affirm the trial court's judgment.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.