FIRST DIVISION

March 28, 2005

 No. 1-04-1262

In re
 MARRIAGE OF JAMES N. KOSMOND,

Petitioner-Appellant,

and

PATRIZIA PETRA KOHLER KOSMOND, 

Respondent-Appellee

(Commerzbank AG, 

Third Party Defendant).

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 04 D 1718

       

Honorable

Carole Kamin Bellows,

Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

The question before us is whether the circuit court erred in granting petitioner's emergency petition for a temporary restraining order (TRO) and preliminary injunction.  The order froze respondent's assets in a German bank under section 11-101 of the Code of Civil Procedure (Code) (735 ILCS 5/11-101 (West 2002)), and dismissed the bank’s motion to quash petitioner's deposition notice.  We conclude that the circuit court had jurisdiction to freeze respondent's assets, but then erred when it failed to hold a hearing on whether the court's order would force the bank or its employees to violate German law.  We reverse and remand with directions.    

This case arises from a divorce action.  Petitioner James Kosmond filed for the dissolution of his marriage to respondent Patrizia Kosmond on February 18, 2004.  That month, Patrizia moved to Germany.  James alleges Patrizia used wire transfers to send substantial marital funds to a bank account in her name at Commerzbank AG in Mainz-Kastel, Germany.

James filed an emergency petition for a TRO and preliminary injunction on March 11, 2004.  The petition sought to freeze the assets in Patrizia's German bank account and add Commerzbank as a third-party respondent.  The circuit court granted the order, 
ex parte.  
Notices of the TRO and summons were served on Commerzbank branches in Chicago and Germany.  James served Commerzbank in Chicago with a notice that the bank's discovery deposition would be taken on March 22, 2004, in Chicago.  

In the meantime, Commerzbank filed an appearance and a motion on March 19, 2004, to dissolve the TRO and quash the deposition notice.  Commerzbank's main argument was that the circuit court lacked jurisdiction over Patrizia's bank account in Germany.  Commerzbank attached the affidavit of Rolf Breisig, its German counsel.  Breisig stated that German law requires a German court to issue an order of judgment before a foreign judgment is enforceable and a German court can do so only if the foreign judgment is final.  He said if Commerzbank enforced the TRO without a German court order, Commerzbank would be liable to Patrizia for damages.  Breisig's affidavit also supported the bank's motion to quash the discovery deposition, stating that German secrecy laws prohibit the disclosure of customer account information without a German court order.  Breisig stated that information about an account held at a branch in Germany would not be accessible by officers at the bank's Chicago branch.  Breisig's affidavit was the only evidence before the court addressing German law.  James did not offer evidence either supporting or contradicting Breisig's affidavit.   

The circuit court heard arguments on April 13, 2004, on Commerzbank's motions to dissolve the TRO and quash the deposition notice.  No court reporter was present and no transcript is of record.  The circuit court denied the motions in a written memorandum opinion and order.  The court issued a preliminary injunction ordering Commerzbank to continue to freeze Patrizia’s assets.  The court determined that it had 
in personam 
jurisdiction to restrain Commerzbank from certain activities and that German law was immaterial to the case.  Commerzbank appeals. 

Commerzbank claims on appeal that the circuit court: (1) lacked jurisdiction to freeze assets held in its Mainz-Kastel branch; and (2) erred in failing to respect German law under the  principles of comity.  

We first address whether the circuit court had jurisdiction to issue a TRO and preliminary injunction to freeze assets in Patrizia's German bank account.  Where the circuit court hears no testimony and determines jurisdiction solely on documentary evidence, we review its decision 
de novo
.  
Gaidar v. Tippecanoe Distribution Service, Inc.
, 299 Ill. App. 3d 1034, 1040, 702 N.E.2d 316 (1998).  

In challenging the circuit court's jurisdiction, Commerzbank conceded the court had 
personal jurisdiction over the parties, but claimed it lacked jurisdiction to freeze Patrizia's bank account because the account
 was not in Illinois.  

Commerzbank cited 
Robbins, Coe, Rubenstein & Shafran, Ltd. v. Ro Tek, Inc.
, 23 Ill. App. 3d 705, 709, 320 N.E.2d 157 (1974), to argue it is not enough for a bank to have a branch within the court's jurisdiction—the account, or 
res
,
 
in property lawyer talk, also must be within the court's jurisdiction.  In the underlying suit in 
Robbins
, the plaintiff won a judgment for $764 plus costs in Cook County circuit court.  The plaintiff filed an affidavit for garnishment (nonwage) to collect the judgment and caused a summons to be served on a bank in La Salle County.  
Robbins
, 23 Ill. App. 3d at 706.  The bank challenged the action because its only branch was in La Salle County, and under the federal National Bank Act (Banking Act) (12U.S.C. §94 (1970)), no action could be maintained against the bank in a county other than La Salle.  
Robbins
, 23 Ill. App. 3d at 706-07.  The 
Robbins
 opinion discusses the relevant section of the Banking Act and the nature of garnishment proceedings.  
Robbins
, 23 Ill. App. 3d at 708-09.  The court wrote of the garnishment process: "It is in the nature of a proceeding [
in rem
] although it moves against a garnishee [
in personam
] [citations], since it is not enough that the garnishee be within the 
jurisdiction
 of the court issuing the process—the 
res
 itself must also be within the court's jurisdiction."   (Emphasis in original.)  
Robbins
, 23 Ill. App. 3d at 709, citing 
Bowen v. Pope
, 26 Ill. App. 233, 234-35 (1887).  This is the statement on which Patrizia relies.  

But 
Robbins
 is of little help in deciding this case.  The narrow issue in 
Robbins
 was whether the venue provisions of the federal Banking Act applied where a national bank is a garnishee-defendant.  
Robbins
, 23 Ill. App. 3d at 706.  The case before us implicates neither garnishment nor the federal Banking Act. 

Alternatively, Commerzbank argues the circuit court's 
personal jurisdiction over the parties
 does not allow Patrizia's assets in Germany to be frozen under 
Golden Rule Insurance Co. v. Widoff
, 291 Ill. App. 3d 112, 115, 683 N.E.2d 541 (1997).  
In personam
 jurisdiction "pertains to the authority of the court to litigate in reference to a particular defendant and to determine the rights and duties of that defendant."  
In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.
, 327 Ill. App. 3d 441, 463, 764 N.E.2d 66 (2001).  The alternative to 
in personam
 jurisdiction is
 i
n rem
 or quasi 
in rem
 jurisdiction.  These forms are "concerned with the relationship between [the] defendant and the state with respect to specific property held by the defendant."  
Commissioner of Banks
, 327 Ill. App. 3d at 463.  

Commerzbank contends that 
in rem 
jurisdiction is necessary where, as here, an action 

" 'affects the interests of all persons in [the] designated property.' " 
 
Golden Rule
, 291 Ill. App. 3d at 115, quoting 
Hanson v. Denckla
,
 357 U.S. 235, 246 n.12, 2 L. Ed. 2d 1283, 1293 n.12
, 78 S. Ct. 1228, 1235 n.12 (1958).
  In 
Golden Rule
, this court affirmed an order of the circuit court dismissing for lack of jurisdiction a motion to freeze the assets of an estate established in Florida.  The plaintiff argued that the circuit court had the authority to freeze the estate’s assets because it could obtain 
in personam
 jurisdiction over the representative of the estate, an Illinois resident.  This court disagreed.  We found that because the plaintiff was not “seeking a ‘personal’ obligation” from the estate or its representative, but was seeking to control the distribution of the estate’s assets, the proceeding was quasi 
in rem
 in nature and required that the assets be within Illinois.  
Golden Rule
, 291 Ill. App. 3d at 116.  Because the assets were located in Florida, an Illinois court could not exercise quasi 
in rem
 jurisdiction over them.  
Golden Rule
, 291 Ill. App. 3d at 116. 

Commerzbank urges us to follow 
Golden Rule
.  It argues that James’ attempt to freeze assets held in its German branch requires quasi 
in rem
 jurisdiction as did the plaintiff’s attempt to control the Florida estate’s assets in 
Golden Rule
.    

We disagree.  In 
Golden Rule
, it was only because we 
did not have 
in personam
 jurisdiction over all of the potential beneficiaries of the Florida estate that the distribution of the estate’s assets could not be enjoined.  
Golden Rule
, 291 Ill. App. 3d at 116.   
In rem
 or quasi 
in rem
 jurisdiction represents an alternative to 
in personam 
jurisdiction.  
"Jurisdiction based on property most typically is invoked when one or more of the defendants or persons with potential claims to the property are nonresidents or jurisdiction over their person cannot be secured in the forum state."  
4A C. Wright & A. Miller, 
Federal Practice & Procedure
 §1070, at 280 (3rd ed. 2002).
  As Commerzbank concedes, 
Golden Rule
 provides that a
 court may exercise control over assets outside its jurisdiction through an injunction “if (1) the equitable order is incidental to the claim being brought; and (2) the court has 
in personam
 jurisdiction over all of the interested parties.”  
Golden Rule
, 291 Ill. App. 3d at 116, citing 
De Licea v. Reyes
, 87 Ill. App. 3d 704, 707, 410 N.E.2d 179 (1980).  

Here, the circuit court properly exercised 
in personam
 jurisdiction over all interested parties.  James was a resident of Illinois.  Under section 2-209(b)(2) of the Code, a court may exercise jurisdiction over a natural person domiciled within the state at the time the action arose. 
 735 ILCS 5/2-209(b)(2) (West 2002).  Patrizia entered a general appearance through counsel.  See 
Haubner v. Abercrombie & Kent International, Inc.
, 351 Ill. App. 3d 112, 117, 812 N.E.2d 704 (2004) (in general, a court obtains personal jurisdiction over a party once service has been effectuated or the party enters a general appearance).  Commerzbank does business within Illinois, maintaining an office in Chicago.  Under section 2-209(b)(4) of the Code, a court may exercise jurisdiction over any corporation doing business within Illinois
.  735 ILCS 5/2-209(b)(4) (West 2002). 

Commerzbank does not contend the requirements for 
in personam 
jurisdiction were not met or dispute that the order to freeze Patrizia’s assets held by Commerzbank was incidental to James’ action to dissolve his marriage.  Because the circuit court had 
in personam
 jurisdiction over all of the parties and the freeze order was incidental to James’ divorce action, the circuit court had the authority to issue the TRO and preliminary injunction.  See 
De Licea
, 87 Ill. App. 3d at 707 (“relief decreed by the trial court may be achieved by acting directly on the parties, who are within the court’s 
in personam 
jurisdiction, regardless of the location of the property”). 

Having determined that the circuit court had jurisdiction, we also conclude that the TRO was proper under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 
et seq.
 (West 2002)) and under section 11-101 of the Code (735 ILCS 5/11-101
 (West 2002)).  Section 102 (8) of the Act establishes the policy of this state is to provide “for the preservation and conservation of assets” during litigation concerning the dissolution of marriage.  750 ILCS 5/102 (8) (West 2002).  In support of that policy, section 501(a)(2)(i) of the Act provides “[e]ither party may move for *** a temporary restraining order or preliminary injunction *** restraining any person from transferring, encumbering, concealing or otherwise disposing of any property.”  750 ILCS 5/501 (a)(2)(i) (West 2002).  

The Act provides broad injunctive authority that supports enjoining not only the parties from dissipating assets but Commerzbank as well.  This is because the order of the circuit court binds all assets of Patrizia held in any branch of Commerzbank under section 11-101 of the Code:
  “Every order granting an injunction and every restraining order *** is binding only upon the parties to the action, their officers, agents, employees, and attorneys, and upon those persons in active concert or participation with them 
who receive actual notice of the order by personal service or otherwise
.”  (Emphasis added.)  735 ILCS 5/11-101 (West 2002).  

Commerzbank’s relationship with Patrizia was one of “active concert or participation.”  The TRO employed here
 was part of the broad injunctive authority available to James under the Act to preserve and prevent dissipation of assets.  James served Commerzbank at both its German and Chicago branches.  Commerzbank argues that 
the service of process on its German branch did not comply strictly with sections 2-202(a) and (b) of the Code of Civil Procedure (735 ILCS 5/2-202(a), (b) (West 2002)) because James did not seek leave of the court to have a special process server appointed.  Given that the record supports the conclusion that Commerzbank received notice, we believe that the service requirements were met.  

We next address Commerzbank's argument that the circuit court should have applied the “separate entity rule” to hold that Patrizia's assets in its German branch were beyond the court’s jurisdiction.  The separate entity rule treats each branch of a bank as a separate entity for the purpose of seizing assets or deposits.  
Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.
, 921 F. Supp. 1113, 1119 (F.D.N.Y. 1996).  Illinois does not follow that rule.  See 
Bank of Montreal v. Clark
, 108 Ill. App. 163, 166-67 (1903) (the commonplace use of the telegraph enables a branch bank readily to inform another branch of the receipt of a garnishment summons).  In light of our conclusion that the circuit court properly exercised 
in personam 
jurisdiction over the parties, we need not revisit the separate entity rule. 

We now consider Commerzbank's more persuasive argument on comity.  The bank contends that the principles of comity require us to set aside the order
 because the bank's compliance with the injunction and deposition notice would require it to violate German law
.  
"Comity is a rule of practice through which a court in this state may take notice of, and defer to, the laws and judicial decisions of a foreign jurisdiction out of respect, goodwill and cooperation." 
 
Ransom v. A.B. Dick Co.
, 289 Ill. App. 3d 663, 669, 682 N.E.2d 314 (1997). 
 
The decision to acknowledge or defer to foreign law under the principles of comity lies within the discretion of the court and may be reversed only if we find an abuse of that discretion.  
Ransom
, 289 Ill. App. 3d at 669-70.
 
 A court abuses its discretion where no reasonable person would adopt the finding of the court.  
Clay v. County of Cook
, 325 Ill. App. 3d 893, 901, 759 N.E.2d 6 (2001).   

 While the decision to grant comity to the laws of another country is within the discretion of the circuit court, this court has held that failure to consider the nature and effect of a foreign law, and its compatibility with the interests and policies of Illinois, is an abuse of discretion
. 
 
Ransom
, 289 Ill. App. 3d at 670.  The circuit court in 
Ransom
 allowed the defendant to file a counterclaim against the plaintiff, a Mexican corporation, seeking to recover principal and interest on certain accounts.  On appeal, the plaintiffs argued the circuit court abused its discretion by failing to consider whether to defer to a Mexican bankruptcy court ruling regarding the accounts and dismiss the counterclaim under principles of comity.  This court agreed: “A determination of whether to grant comity to the laws of another jurisdiction necessarily requires an examination of those laws and their application ***.”  
Ransom
, 289 Ill. App. 3d at 670.  We concluded the circuit court abused its discretion by not conducting a hearing examining “the nature and effect of the Mexican bankruptcy code and its compatibility with the interests and policies of this state.”  
Ransom
, 289 Ill. App. 3d at 670. 

 The factors relevant to deciding whether to set aside an order because it requires a party to violate the law of a foreign country were examined in 
United States v. First National Bank of Chicago
, 699 F.2d 341, 345 (7th Cir. 1983).  There, the district court had ordered a bank to disclose records held by its branch in Athens, Greece.  The bank argued on appeal 
that if it disclosed the records, its employees would be subject to imprisonment under Greek law.  The Seventh Circuit agreed that Greek criminal law prohibited disclosure of the documents but concluded that this fact “does not automatically bar a domestic court from compelling production.”  
First National Bank
, 699 F.2d at 345.  The court went on to apply a balancing test taken from the Restatement (Second) of Foreign Relations Law of the United States §40 (1965), and weighed the following factors:

"(a) [the] vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.”  
First National Bank
, 699 F.2d at 345.

The court evaluated these factors, concluding both Greece and the United States had interests in the enforcement of their laws (factor (a)), and the required disclosure would be made in Greece (factor (c)), most likely by a Greek national (factor (d)).  The court emphasized the importance of factor (b)—the extent of hardship on the party—and the fact that disclosing the records meant risking not just a fine, but imprisonment.  The court found the factors weighed against enforcing the disclosure order at that time, and directed the district court to consider ordering the bank to make a good-faith effort to receive permission from Greek authorities to disclose the documents.  
First National Bank
, 699 F.2d at 346.  

The Seventh Circuit reappraised the test in light of the Restatement (Third) of Foreign Relations Law of the United States §442 (1987), and found the test was “substantially similar to that of 
First National Bank
” and the "factors to be considered remain largely synonymous.”  
Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat
, 902 F.2d 1275, 1282 (7th Cir. 1990).  The Seventh Circuit gave the district court latitude to require a party to show a good-faith effort to receive permission from the foreign authorities to disclose the information.  
Reinsurance Co. of America
, 902 F.2d at 1282.

Here, the circuit court had before it only the affidavit of Breisig.  The record does not suggest and the order does not support the conclusion that the court gave meaningful consideration to the possible effect of German law.  We believe that declining to consider German law without evaluating its effect on Commerzbank was an abuse of the court's discretion.  

We reverse the circuit court's grant of a TRO and preliminary injunction.  We remand for a hearing and consideration of the factors in 
First National Bank
, 699 F.2d at 345.  

The judgment of the circuit court is reversed and the cause is remanded for a hearing and consideration of the possible effect of German law.

Reversed and remanded with directions.  
 

GORDON and McBRIDE, JJ., concur.