2009 Ark. 302

**Jean HETMAN, Appellant,**

v.

**Annamarie SCHWADE, Appellee.**

**No. 08–1273.**

Supreme Court of Arkansas.

May 21, 2009.

Parker Law Firm, LTD, by: Tim S. Parker, Eureka Springs, for appellant.

William A. Hill, Jr., Beaver, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This appeal arises from an order of the Carroll County Circuit Court entering an order directing appellant Jean Hetman to provide an accounting of the years for which she served as guardian for her mother, Alexandra Vicari. The guardianship in this case was originally created in Pennsylvania. On May 15, 2000, Hetman filed a petition for appointment of an emergency guardian of the person and es-

tate of Vicari in the Court of Common Pleas of Lehigh County, Pennsylvania, Orphans' Court Division. The Pennsylvania court entered an order on May 17, 2000, appointing Hetman and her sister, appellee Annamarie Schwade, as emergency co-guardians of Vicari's person and estate.

On May 26, 2000, Hetman sought appointment as permanent guardian for Vicari. Schwade responded to Hetman's petition on June 29, 2000, requesting that both sisters be appointed co-guardians. The Pennsylvania court entered an order on July 12, 2000, declaring Vicari to be incapacitated and appointing Schwade and Hetman as plenary co-guardians of Vicari's estate and person. However, the court's order provided that only Hetman had authority to sign checks on Vicari's behalf.

From 2000 to 2006, Hetman placed Vicari in various residential care facilities in Pennsylvania and New Jersey.[1] However, in June of 2006, Schwade removed her mother from an assisted living facility in New Jersey and brought her to Eureka Springs, where Schwade lives. Schwade filed a petition for appointment as guardian in the Carroll County Circuit Court on July 3, 2006.[2] On September 1, 2006, Hetman filed a petition for review of the guardianship in the Pennsylvania court, seeking to be appointed sole guardian for her mother. Schwade then filed an answer and counterpetition in January of 2007 in which she asked the Pennsylvania court to appoint her sole guardian and transfer jurisdiction of the guardianship case to the Circuit Court of Carroll County.

On April 27, 2007, the Pennsylvania court entered an order terminating Het-

---

1. Before moving to Pennsylvania in 2000, Vicari had lived in Eureka Springs, where Schwade also resides.

2. The Carroll County court initially declined to enter any orders in the case filed in Arkansas until the Pennsylvania court either closed the file there or transferred the case to Carroll County.

man's guardianship, noting that Schwade would continue as sole guardian, and transferring jurisdiction of Vicari's guardianship to the Carroll County Circuit Court.[3] The Carroll County court then entered an order on May 1, 2007, accepting "transfer of the jurisdiction of the Guardianship of the Estate and Person of Alexandra Vicari."

Hetman filed an objection to Schwade's Arkansas petition for guardianship on July 9, 2007, in the Carroll County Circuit Court. In addition, she filed a petition for appointment of a guardian ad litem on November 30, 2007. The court granted Hetman's request for a guardian ad litem on December 6, 2007.

Shortly thereafter, Schwade filed a petition for accounting in Carroll County on December 14, 2007, arguing that Hetman had depleted Vicari's estate during her time as guardian in Pennsylvania. Schwade alleged that Hetman, who had the sole authority to sign checks under the terms of the Pennsylvania court's order appointing the sisters as co-guardians, had made expenditures in excess of $30,000 that did not appear to have been for the benefit of the ward. Hetman responded in February of 2008, arguing that the Arkansas court lacked subject-matter jurisdiction over matters that took place in the Pennsylvania probate proceeding and that the Arkansas court had no authority to order a person who is not an Arkansas guardian to file an accounting. Asserting that Schwade never brought the alleged misfeasance to the attention of the Pennsylvania court, but could have, Hetman also contended that principles of res judicata barred Schwade's action.

Schwade replied that she did not learn of Hetman's alleged wrongdoing until after she was granted the guardianship in Arkansas and obtained access to her mother's financial records. Therefore, she argued, she could not have raised the matter in the Pennsylvania court. Moreover, because Pennsylvania had not had an opportunity to examine the issue, and Arkansas was now the only court that could exercise authority over the guardianship of Vicari's estate and person, Schwade urged that the Arkansas court had both the personal and subject-matter jurisdiction necessary to order an accounting.

The circuit court held a hearing on February 11, 2008. Although the court initially expressed some skepticism about whether it possessed jurisdiction, it subsequently issued a letter opinion on March 13, 2008, in which it found that Hetman had personally appeared before the court by filing pleadings and seeking affirmative relief. The court further stated that, as it had personal jurisdiction over Hetman for one purpose, it likewise had "jurisdiction over her person for all purposes." Accordingly, the court granted the petition for accounting and required the production of all previous accountings, as well as the creation of new initial inventories and annual accountings for Vicari's estate for the years 2000 through 2005 and a final accounting for 2006. The court then entered a formal order for accounting on April 2, 2008, ordering Hetman to "furnish full copies of all books and records, checks, receipts and disbursements, invoices or vouchers available." Hetman filed her notice of appeal on April 24, 2008.

---

3. The Pennsylvania court did not require an accounting from Hetman before terminating her guardianship. Under Pennsylvania law, such an accounting is not mandatory at that time. *See* 20 Pa. Cons.Stat. Ann. § 5531 ("A guardian shall file an account of his administration whenever directed to do so by the court or *may* file an accounting at the termination of the guardianship, or at any other time or times authorized by the court.") (emphasis added).

Our standard of review in probate cases is well settled. This court reviews probate proceedings de novo on the record, but it will not reverse the decision of the circuit court unless it is clearly erroneous. *Seymour v. Biehslich,* 371 Ark. 359, 266 S.W.3d 722 (2007); *Bullock v. Barnes,* 366 Ark. 444, 236 S.W.3d 498 (2006). In conducting our review, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Seymour, supra.* Furthermore, while we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law. *Standridge v. Standridge,* 304 Ark. 364, 803 S.W.2d 496 (1991); *Conner v. Donahoo,* 85 Ark.App. 43, 145 S.W.3d 395 (2004).

Hetman raises three points on appeal. Her first argument challenges the circuit court's subject-matter jurisdiction, and her second challenges the authority of the Arkansas court to order an accounting by an out-of-state guardian; we address these issues together. Hetman's third argument on appeal contends that the Pennsylvania proceedings were res judicata and should have precluded the circuit court from considering Schwade's request for an accounting.

In her first point on appeal, Hetman argues that the circuit court erred in granting the petition for accounting because the court lacked subject-matter jurisdiction to order a non-guardian in the Arkansas case to account for the time period and events covered by the Pennsylvania guardianship. She asserts that, although a court may require a guardian to file an accounting pursuant to Ark.Code Ann. § 28–65–320 (Repl.2004), this statute only applies to Arkansas guardianship cases or those who are serving as guardian in such

cases. She further maintains that this statute does not authorize an Arkansas court "to order accountings from guardians who have previously served in out-of-state guardianship proceedings, particularly where they have never served as a guardian in an Arkansas proceeding."

In support of her argument, Hetman cites *Merchants Bonding Co. v. Starkey,* 337 Ark. 229, 987 S.W.2d 717 (1999). In that case, Barbara Kennedy was appointed guardian in Texas and posted a $50,000 bond in the County Court of El Paso County; Merchants Bonding Co. was the surety on the bond. Kennedy later transferred the guardianship and its assets to Miller County, Arkansas. Several years later, the Miller County Probate Court determined that Kennedy had mismanaged the guardianship estate and rendered a judgment against the bonding company. On appeal, this court reversed, holding that the plain language of the Texas bond stated that Kennedy and Merchants Bonding were "held and firmly bound unto the county Judge of El Paso County, and his successors in office." Because the parties contemplated only that the bond would be payable in Texas, this court held that proper jurisdiction for any suit instituted on the bond given in Texas could only be in a Texas court. *Merchants Bonding Co.,* 337 Ark. at 233, 987 S.W.2d at 719 (citing 12 Am.Jur.2d *Bonds* § 34 (1997)).

Hetman argues that this case is "instructive" because it shows that, while an Arkansas court might have had subject-matter jurisdiction over the guardianship, it did not have subject-matter jurisdiction over the Texas guardianship-related bond. However, *Merchants Bonding Co.* appears to have turned solely on a question of the plain language of the bond, and not on any analysis of the jurisdiction of the probate court in general. Thus, it does not lend

the support to Hetman's argument that she claims it does.

Schwade, in turn, argues that Hetman has confused subject-matter jurisdiction with personal jurisdiction. Citing Ark. Code Ann. § 28–65–107(a) (Repl.2004), she notes that the probate court clearly has subject-matter over guardianship proceedings. That statute provides that the "jurisdiction of the circuit court over all matters of guardianship, other than guardianships ad litem in other courts, shall be exclusive, subject to the right of appeal." Schwade further contends that the Carroll County Circuit Court has personal jurisdiction over Hetman because Hetman sought affirmative relief from the court by filing a petition for appointment of a guardian ad litem for Vicari. *See Ark. Dep't of Human Servs. v. Farris,* 309 Ark. 575, 832 S.W.2d 482 (1992) (once defendant filed pleadings with the court seeking affirmative relief on the merits of the case, he could not complain that the court did not have personal jurisdiction over him).

Schwade further relies on *A & P's Hole–in–One, Inc. v. Moskop,* 38 Ark.App. 234, 832 S.W.2d 860 (1992), for its discussion of an accounting as an equitable remedy that is "designed to provide a means for compelling one, who because of confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due." *A & P's Hole–in–One,* 38 Ark.App. at 239, 832 S.W.2d at 863. Schwade contends that Hetman's status as a fiduciary, even a former one, gave the circuit court the authority to require an accounting from her.

We agree that the Carroll County court had both subject-matter jurisdiction[4] over the matter of the guardianship and personal jurisdiction over Hetman. Section 28–65–107(a) gives the circuit court jurisdiction over guardianship matters, and the subject of the guardianship, Vicari, now resides in Arkansas. Personal jurisdiction arose from Hetman's seeking of affirmative relief in the circuit court. However, we must still consider whether the court had the *authority* to order an accounting from one who was never appointed a guardian in Arkansas. Hetman questions this authority in her second point on appeal, arguing that Arkansas Code Annotated section 28–65–320 (Repl. 2004), which requires guardians to make certain accountings, only applies to guardians appointed by Arkansas courts.

Arkansas courts have long referred to guardianship cases as special proceedings. *See, e.g., Nelson v. Cowling,* 89 Ark. 334, 116 S.W. 890 (1909). Further, special proceedings are governed by statute. *First Security Bank v. Estate of Leonard,* 369 Ark. 213, 253 S.W.3d 434 (2007); *In re Adoption of Baby Boy Martindale,* 327 Ark. 685, 940 S.W.2d 491 (1997). The Arkansas statute governing a guardian's duty to provide an accounting is Arkansas Code Annotated section 28–65–320, which provides in pertinent part as follows:

(a) Unless otherwise directed by the court, *a guardian of the estate* shall file with the court a written verified account of his or her administration:

(1) Annually within sixty (60) days after the anniversary date of his or her appointment; and

---

4. This court has noted that the question of subject-matter jurisdiction is determined by the characterization of the case. *See, e.g.,*

*Priest v. Polk,* 322 Ark. 673, 912 S.W.2d 902 (1995).

(2) Within sixty (60) days after termination of his or her guardianship.

(Emphasis added.)

■ Hetman urges that she was never appointed as a guardian in Arkansas, and thus she cannot be required to file an accounting under this statute as could be required of an Arkansas guardian. We first note the general rule that statutes have no effect except within the state's own territorial limits. *See Chalmers v. Toyota Motor Sales, USA, Inc.,* 326 Ark. 895, 935 S.W.2d 258 (1996); *Widmer v. Wood,* 243 Ark. 457, 420 S.W.2d 828 (1967). Although there is no case law interpreting the phrase "a guardian of the estate" in section ⌊₁₀28–65–320,[5] we conclude in this case that the statute does not apply to a former guardian who was appointed, served, and removed as guardian solely under the laws of another state.

This conclusion is also supported by common law principles. Traditionally, a foreign representative or guardian could only be held to account in the state in which he or she was appointed. For example, in *Vaughan v. Northup,* 40 U.S. 1, 15 Pet. 1, 10 L.Ed. 639 (1841), the United States Supreme Court considered whether an administrator of an estate could be sued for an accounting in the District of Columbia when the letters of appointment were obtained in Kentucky. There, following his appointment in Kentucky, the administrator, Northup, received funds from the United States government on behalf of the decedent's estate. The decedent's next of kin filed suit against Northup in the District of Columbia, where he was residing at the time, for an accounting of the estate and the assets received on behalf of the estate. *Vaughan,* 40 U.S. at 2. The circuit court dismissed the suit, finding a want of

jurisdiction. *Id.* at 4. On appeal, the Supreme Court affirmed, holding as follows:

Under these circumstances, the question is broadly presented, whether an administrator, appointed and deriving his authority from another state, is liable to be sued here, in his official character, for assets lawfully received by him, under and in virtue of his original letters of administration. We are of opinion, both upon principle and authority, that he is not. *Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries.* It cannot confer, as a matter of right, any authority to collect assets of the deceased, in any other state; and whatever ⌊₁₁operation is allowed to it beyond the original territory of the grant, is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens. On the other hand, *the administrator is exclusively bound to account for all the assets which he receives, under and in virtue of his administration, to the proper tribunals of the government from which he derives his authority; and the tribunals of other states have no right to interfere with or to control the application of those assets,* according to the *lex loci.* Hence, it has become an established doctrine, that an administrator, appointed in one state, cannot, in his official capacity, sue for any debts due to his intestate, in the courts of another state; and that he is not liable to be sued in that capacity, in

---

**5.** "Guardian" is defined in Arkansas Code Annotated section 28–65–101(3) (Repl.2004) as "one appointed by a court to have the care and custody of the person or of the estate, or of both, of an incapacitated person."

the courts of the latter, by any creditor, for any debts due there by his intestate. *Id.* at 4 (emphasis added).

■ Stated another way, absent a statute to the contrary, where a court of one state grants a specific authority to an individual, whether as administrator or an estate or guardian of a ward, the authority vested in that person remains confined to the state in which the appointment was made; no other tribunal has the authority to reach beyond the confines of its own territory to order the individual to take any given action, such as—in this case— filing an accounting, whether in the original state of the appointment or in the state in which the second tribunal resides.

Other, albeit older, cases involving guardians are in accord with this principle. *See, e.g., Bell v. Suddeth,* 10 Miss. (2 S. & M.) 532 (1844) (probate court lacked jurisdiction to order guardian to order an accounting where the guardian had been appointed in Alabama, but not in Mississippi); *Anderson v. Story,* 53 Neb. 259, 73 N.W. 735 (1898) (even where parties stipulated to Nebraska court's jurisdiction, that court lacked authority to entertain an accounting by a guardian who had been appointed in New York or to discharge the guardian); *cf. Am. Sur. Co. of N.Y. v. Fitzgerald,* 36 S.W.2d 1104 (Tex.Civ.App. 1931) (guardian, Webster, who was appointed first in New York and later in Texas could be sued in Texas, upon the revocation of his Texas guardianship, for an accounting of his time as guardian in New York; the Texas Court of Civil Appeals noted that the court, "having power to appoint Webster, nonresident guardian of the ward's estate in Texas, retained jurisdiction to control his activities, to remove him for cause, and to appoint his successor").

Arkansas acknowledged this traditional common-law rule in *Clopton v. Booker,* 27 Ark. 482 (1872), in which we described the law at that time as "well settled that an executrix, as such, cannot be held to an account and settlement before a foreign court, or the court of a different State from the one granting such letters." *Clopton,* 27 Ark. at 486. The *Clopton* court held, however, that the lower court had authority to entertain the suit because the case involved the title to and right to possession of Arkansas lands; moreover, the court did not interpret the complaint as seeking an accounting from the defendant in her capacity as executrix. *Id.* ("[I]t seems as well settled that the title of lands, and the right of possession thereto, must be determined by the courts of the State wherein the lands lie."). We have no such circumstances here. The ward, Alexandra Vicari, has no real property or other local assets, and there is no question of whether she possesses title to any land. Additionally, unlike the *Clopton* case, the petition for an accounting and the order for an accounting are directed to Hetman in her capacity as guardian.

■ These older cases are based on the common law; nonetheless, we conclude that nothing in our statutory procedures indicate a contrary result on these particular facts. The "traditional rule" was a broad one and barred *any* actions against a guardian or administrator, including actions for the particular relief of an accounting. A foreign representative or guardian's complete immunity from suit under the traditional rule has been abrogated to some degree by the advent of long-arm statutes allowing in personam jurisdiction over foreign guardians or representatives in appropriate circumstances. *See, e.g., Golden Rule Ins. Co. v. Widoff,* 291 Ill.App.3d 112, 225 Ill.Dec. 373, 683 N.E.2d 541 (1997). The responsibility to provide an accounting to a foreign court, however, is of a different character than

the type of actions for which in personam jurisdiction will suffice. *Cf. Golden Rule, supra* (concluding that an action to enjoin a foreign personal representative's distribution of assets in another state could not be sustained on the basis of in personam jurisdiction). Guardianship proceedings are purely statutory, and the particular circumstances of this case turn upon the absence of statutory authority to order a foreign guardian to render a statutory accounting, rather than on the presence or absence of in personam jurisdiction.

Taken as a whole, our statutes on guardianships and these cases indicate that the Carroll County Circuit Court lacked the statutory and territorial authority to compel Hetman to file an accounting of her time as guardian in Pennsylvania. Under section 28–65–320, the court may direct "a guardian of the estate" to file an accounting; however, as Hetman correctly notes, she has never been a guardian of Vicari's estate in Arkansas. While the statute does not specifically state that a court may only order an accounting from "an Arkansas guardian of the estate," the above-cited case law makes it plain that an Arkansas court is prohibited from ordering an accounting from a former foreign guardian.[6] Accordingly, we conclude that the circuit court erred in ordering Hetman to render an accounting of her time as guardian of Vicari's person and estate in Pennsylvania.

In her final point on appeal, Hetman contends that the doctrine of res judicata should also have precluded the circuit court from ordering her to file an accounting. Having reversed on the issues discussed above, we do not find it necessary to address Hetman's res judicata argument. However, even if we were to consider the issue, we would still be unable to reach the merits of it because the trial court's order compelling an accounting did not rule on the question. The matter is thus not preserved for appellate review. *See Lloyd v. Butts,* 343 Ark. 620, 37 S.W.3d 603 (2001) (although appellant raised res judicata as a defense below, the chancellor did not rule or rely on it in his final order; therefore, the court was unable to reach the issue on appeal); *Slaton v. Slaton,* 330 Ark. 287, 956 S.W.2d 150 (1997) (when appellant asserted the defense of res judicata, but failed to obtain a ruling from the chancellor on the issue, this court refused to consider the issue on appeal); *Morrison v. Jennings,* 328 Ark. 278, 943 S.W.2d 559 (1997).

Reversed and remanded.

HANNAH, C.J., and GUNTER and DANIELSON, JJ., concur.

BROWN, J., concurs.

JIM HANNAH, Chief Justice, concurring.

I concur in the conclusion that the circuit court erred in ordering Jean Hetman to provide an accounting for the time that she served as guardian of Alexandra Vicari under the prior Pennsylvania guardianship.[1] However, I disagree with the ma-

---

6. In addition, although our statutes allow a foreign guardian to petition for authority to bring certain actions within this state, *see* Ark.Code Ann. §§ 28–65–601 to –602 (Repl. 2004), this statute does not grant any authority to a court of this state to compel an accounting from a foreign guardian.

1. As the majority notes, the circuit court and the Pennsylvania court characterized this as

transfer of a guardianship. There is no basis in the law for a transfer of guardianship between states. No transfer occurred here. A review of the record plainly reveals that the guardianship in Pennsylvania was terminated and, thereafter, a guardianship was created in Arkansas. While the term "transfer" may be useful in helping the courts to assure that a ward is provided with continuous care, it

jority's conclusion that the circuit court had subject-matter jurisdiction over the requested accounting but lacked any authority to order an accounting to be undertaken. Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Erin, Inc. v. White County Circuit Court*, 369 Ark. 265, 268, 253 S.W.3d 444, 447 (2007). The circuit court either had jurisdiction or it did not. Here the circuit court did not have subject-matter jurisdiction.

The circuit court lacked subject-matter jurisdiction to order an accounting in a Pennsylvania guardianship supervised and controlled by the Pennsylvania courts. The confusion may arise because the circuit court had subject-matter jurisdiction over the Arkansas guardianship, but that jurisdiction does not reach to control a proceeding before another court in another state in a separate prior guardianship. Guardianships in Arkansas are now largely controlled by statute. *See* Arkansas Code Annotated, title 28. Guardians appointed in Arkansas guardianships must file accountings "(1) [a]nnually within sixty (60) days after the anniversary date of his or her appointment; and (2) within sixty (60) days after termination of his or her guardianship." Ark.Code Ann. § 28–65–320 (Repl.2004). There is no provision in our statutes that purports to grant subject-matter jurisdiction over accountings for actions before a guardianship is created in Arkansas, and certainly we do not have any statutes that would confer jurisdiction on an Arkansas guardianship proceeding that would allow the circuit court to review

and act in proceedings occurring under the direction and control of a sister state. If an accounting is to be ordered for the Pennsylvania guardianship, a Pennsylvania court will need to order it.

Schwade is not left without a remedy. The Orphans' Court in Pennsylvania specifically ordered that the record in that case be retained. An accusation that a guardian supervised by the Pennsylvania courts defrauded a ward may result in reopening the guardianship and ordering an accounting by Hetman. Further, if Hetman defrauded Vicari, Schwade, as the Arkansas guardian, is free to pursue any cause of action that exists. *See* Ark.Code Ann. § 28–65–305 (Repl.2004) (guardian may prosecute suits on behalf of the ward).

GUNTER and DANIELSON, JJ., join.

ROBERT L. BROWN, Justice, concurring.

I concur in the judgment because I agree with the majority that under current Arkansas statutes, the circuit judge lacked authority to order Ms. Hetman, a previous guardian who was appointed and removed by a Pennsylvania court, to file an accounting. That is unfortunate since I believe an accounting is appropriate in this case. I write separately to express my view that the Arkansas General Assembly should consider amending our guardianship statutes to address circumstances comparable to those that occurred in the instant case.[1]

In our increasingly mobile society, I fear we will see many more cases with facts similar to those in this case, and Arkansas courts need the authority to effectively

creates confusion when it is argued that jurisdiction was transferred.

1. At least four states and the District of Columbia, have passed the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (UAGPPJA) and another twenty

are considering the measure. The UAGPPJA does not include a provision that would apply directly to these facts, but it does contemplate many of the problems that can arise with regard to multi-jurisdictional guardianship proceedings.

manage guardianships that are transferred here from other jurisdictions. I recognize the procedural problems associated with this case. Ms. Hetman is no longer a guardian of her mother's person or estate, and the Pennsylvania court did not have authority to transfer jurisdiction of the case to Arkansas. Where, as here, however, an Arkansas court specifically accepts jurisdiction of a guardianship from another state, and the former guardian submits to the jurisdiction of the court, that court should be permitted by statute to order the former guardian to file an accounting.